MITCHEL J. O'HARA, SR., ET AL. *v.* STATE OF
CONNECTICUT ET AL.
(13967)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued February 13—decision released May 14, 1991

*Michael J. Mannion,* for the appellant-appellee (defendant Alenter, Inc.).

*Timothy S. Hollister,* with whom were *Colleen M. Wolter* and, on the brief, *Mary A. Glassman,* for the appellees-appellants (plaintiffs).

HULL, J. The plaintiffs, Mitchel J. O'Hara, Sr., and Mitchel J. O'Hara, Jr., brought an action to recover damages for breach of contract against the defendant

Alenter, Inc. (Alenter),[1] based on the defendant's failure to convey a parcel of real property to the plaintiffs. The trial court, *West, J.,* rendered judgment for the plaintiffs. The defendant appealed and the plaintiffs cross appealed to the Appellate Court. We transferred the appeals to this court pursuant to Practice Book § 4023 and we now affirm.

The material facts are either stipulated or undisputed. On March 7, 1979, John Lobdell conveyed to Sailing Systems, Inc. (Systems), a corporation owned by the plaintiffs' predecessors in interest, Hugh M. Greenwald and Francis H. Snyder, a parcel of real property located on the west side of Candlewood Lake Road in Brookfield (the western property). On November 9, 1979, Lobdell, who also owned a parcel of property located on the east side of Candlewood Lake Road (the eastern property), executed an agreement[2] (the agreement)

---

[1] The plaintiffs' initial complaint named the state of Connecticut as the defendant in the first count and Alenter as the defendant in the second count. With respect to the first count, the plaintiffs sought: (1) a judgment declaring that the plaintiffs' interest in a designated parcel of real property was superior to the interest of the state; and (2) an order directing the state to convey the parcel of property to the plaintiffs. On motion of the state, the town of Brookfield was joined as a third party defendant. In its third party complaint, the state claimed that: (1) because the state had purchased the property at issue for the benefit of the town, the town was the real party in interest; and (2) the town had agreed to indemnify the state in actions involving the property. Thereafter, the plaintiffs, the state and the town filed a motion to render judgment on the claims against the state and the town in accordance with a written stipulation of judgment. Pursuant to the stipulation, the state agreed to convey a designated parcel of property to the plaintiffs and to withdraw its third party complaint against the town in exchange for which the plaintiffs agreed to accept a deed to the property subject to a restrictive covenant involving its use and to withdraw their claim against the state. The trial court, *Sullivan, J.,* granted the motion and rendered judgment in accordance with the stipulation. Thereafter, the plaintiffs filed an amended complaint, pursuant to which this case was tried, naming Alenter as the sole defendant.

[2] The agreement provides in pertinent part:

"That, WHEREAS, LOBDELL has entered into a contract with SYSTEMS dated March 7, 1979 with reference to the conveyance of a small

along with the defendant and Systems, providing that, following a transfer of the eastern property from Lobdell to the defendant, the defendant would fulfill Lobdell's obligation to convey to Systems a portion of the

parcel of land located on the Easterly side of the present Candlewood Lake Road in the Town of Brookfield, County of Fairfield and State of Connecticut, and

"WHEREAS, LOBDELL has also entered into a contract of sale with ALENTER covering premises on the Easterly side of said Candlewood Lake Road, which contract of sale includes the portion which is under the aforesaid contract of sale with SYSTEMS and which contract with ALENTER recites that it is subject to the provisions of the aforesaid contract with SYSTEMS, and

"WHEREAS, it is the intention of all of the parties that the parcel to be conveyed to SYSTEMS will be the parcel remaining after the proposed relocation of Candlewood Lake Road occurs and that the balance of the premises now owned by LOBDELL to be conveyed to ALENTER on the Easterly side of the relocated Candlewood Lake Road will belong to ALENTER, and

"WHEREAS, the parties hereto desire to clarify the descriptions in the aforesaid contract with SYSTEMS and to clarify the rights and obligations of SYSTEMS and ALENTER in and to said premises presently owned by LOBDELL.

"NOW, THEREFORE, the parties hereto covenant and agree as follows:

"1. When the relocation of Candlewood Lake Road occurs ALENTER will convey to SYSTEMS that portion of the property presently owned by LOBDELL lying Westerly of the proposed relocation of Candlewood Lake Road  . . . .

"3. At the time of the relocation of Candlewood Lake Road ALENTER will convey to the Town of Brookfield the proposed parcel shown as 'Proposed Relocation of Candlewood Lake Road' and ALENTER will not make any claim of any interest in the existing Candlewood Lake Road and will cooperate to see that the existing Candlewood Lake Road will be conveyed to SYSTEMS, or will be abandoned by the Town of Brookfield and thereby becomes vested in property owned by SYSTEMS which adjoins Candlewood Lake Road on the West.

"4. In the event that the relocation of Candlewood Lake Road is altered from the relocation depicted on the attached Map then this Agreement will be similarly modified, the intention hereof being that ALENTER will acquire all land lying Easterly of the relocated Candlewood Lake Road and SYSTEMS will acquire all land lying Westerly of the relocated Candlewood Lake Road. . . .

"6. In the event that the proposed relocation of Candlewood Lake Road does not occur then upon the parties ascertaining the fact that the reloca-

eastern property,[3] the specifics of the conveyance to be determined by the outcome of the proposed reconstruction of Candlewood Lake Road.[4]

On January 2, 1980, Lobdell conveyed the eastern property to the defendant. On November 18, 1983, Greenwald and Snyder conveyed the western property to the plaintiffs. On December 22, 1983, Systems, Greenwald and Snyder assigned all of their respective rights and interest arising out of the agreement to the plaintiffs.

On October 25, 1984, the commissioner of transportation (commissioner) applied to the Superior Court, on behalf of the state, for approval to purchase a portion of the eastern property (eastern strip) from the

tion will not occur ALENTER will convey to SYSTEMS a parcel of land bounded Northerly by [the] South side of the right of way shown as an entrance to the tennis courts on the aforesaid map attached hereto; Easterly by the Easterly boundary of the proposed relocation of Candlewood Lake Road, as shown on said Map; Southerly 99.76 feet by land now or formerly of the First Connecticut Small Business Investment Co.; and Westerly by the existing Candlewood Lake Road. All other property to be conveyed by LOBDELL to ALENTER under the terms of their contract of sale will be retained by ALENTER and SYSTEMS will have no further interest of any kind in and to said land.

"7. By the signing of this Agreement SYSTEMS recognizes and agrees that the premises described above are to be conveyed from LOBDELL to ALENTER and ALENTER will fulfill LOBDELL'S obligations under his contract with SYSTEMS and by the signing hereof ALENTER agrees that it will so fulfill LOBDELL'S obligations under said contract all of which are as amended by the signing of this Agreement.

"8. In the event that the proposed relocation of Candlewood Lake Road has not occurred within five (5) years of the date of this Contract then the parties agree that the conveyance, as called for in Paragraph 6 hereinabove, will take place."

[3] Although the agreement indicates that, on March 7, 1979, in addition to conveying the western property, Lobdell and Systems also executed a contract concerning a small portion of the eastern property; see footnote 2, paragraph 2, supra; such a contract does not appear in the record.

[4] A map depicting Candlewood Lake Road, the area of its proposed relocation and the surrounding property is provided in the appendix to this opinion.

defendant, in order to undertake reconstruction of Candlewood Lake Road. See General Statutes § 13a-73 (c).[5] On November 13, 1984, the plaintiffs requested that the defendant convey to them a portion of the eastern property (the eastern wedge), in accordance with paragraph eight of the agreement. The defendant did not comply with the plaintiffs' request. On November 30, 1984, the Superior Court, *Hon. Roman Lexton,* state trial referee, approved the state's proposed acquisition of the eastern strip, which included the eastern wedge. On December 14, 1984, the defendant conveyed the eastern strip to the state.

By deed dated March 28, 1986, the defendant quitclaimed any interest that it had in the eastern wedge to the plaintiffs. Thereafter, the plaintiffs instituted the present action against the defendant and the state. On September 4, 1987, pursuant to a stipulated judgment in which the plaintiffs withdrew their claim against the state, the state conveyed a portion of the eastern wedge to the plaintiffs. See footnote 1, supra.

The defendant claims that the trial court improperly: (1) determined that the defendant's failure to convey the eastern wedge to the plaintiffs on November 9, 1984, constituted a breach of the agreement; (2) rejected the defendant's claim that its duty to perform

---

[5] General Statutes § 13a-73 (c) provides: "PURCHASE. The commissioner may purchase any land and take a deed thereof in the name of the state when such land is needed in connection with the layout, construction, repair, reconstruction or maintenance of any state highway or bridge, and any land or buildings or both, necessary, in his opinion, for the efficient accomplishment of the foregoing purpose, provided any purchase of such land or land and buildings in an amount in excess of the sum of fifteen thousand dollars shall be approved by a state referee. The commissioner, with the advice and consent of the attorney general, may settle and compromise any claim by any person, firm or corporation claiming to be aggrieved by such layout, construction, reconstruction, repair or maintenance by the payment of money, the transfer of other land acquired for or in connection with highway purposes, or otherwise."

was excused; (3) rejected the defendant's defense of implied waiver; and (4) rejected the defendant's claim that the amount awarded to the plaintiffs as damages should be reduced by the value of a parcel of property conveyed to the plaintiffs by the state following the defendant's breach. In their cross appeal, the plaintiffs claim that the trial court improperly denied their request for prejudgment interest.

I

The defendant first claims that the trial court should not have concluded that paragraph eight of the agreement required the defendant to convey the eastern wedge to the plaintiffs on November 9, 1984, and that the defendant's failure to do so constituted a breach of contract. In support of this claim, the defendant argues that the trial court: (1) mistakenly determined that the defendant did not contest the plaintiffs' allegation that its failure to convey the property on November 13, 1984, constituted a breach of contract; and (2) misinterpreted the plain language of the agreement in its finding that paragraph eight of the agreement governed the claim.[6] We disagree.

---

[6] In support of this argument, the defendant implicitly asserts that the trial court should have found that because the state had initiated the process of acquiring the defendant's property for the purposes of the reconstruction project prior to November 9, 1984, the relocation of Candlewood Lake Road had occurred within five years and that, therefore, paragraph eight of the agreement did not apply. Because the defendant stipulated that the relocation of Candlewood Lake Road had not occurred within five years of the execution of the agreement, we conclude that this assertion is entirely without merit.

In an alternative argument, the defendant asserts that the trial court mistakenly determined that the parties to the agreement had ascertained that the proposed relocation of Candlewood Lake Road would not occur and that, therefore, under paragraph six of the agreement, the defendant was required to convey the eastern wedge to the plaintiffs. The defendant has misinterpreted the trial court's decision in this regard. The plaintiffs' complaint alleged that, pursuant to paragraph eight, the defendant was

The trial court determined that because the defendant stipulated that the relocation of Candlewood Lake Road had not occurred within five years of the execution of the agreement and because the defendant did not challenge the validity and enforceability of the agreement, the only issue was the validity of the defendant's special defenses. Thus, despite the defendant's denial of the plaintiffs' claim that it had breached the agreement set forth in its pleading, the trial court either implicitly determined that the defendant no longer contested the plaintiffs' claim of breach or rejected the defendant's denial of the allegation on the basis of its interpretation of the agreement. The precise basis for the trial court's decision, however, is unclear. "Faced with this ambiguity, it was [the defendant's] responsibility to request the trial court to articulate its decision further and to seek an explicit finding [on the claim of breach] that would then constitute an adequate record reviewable on appeal." *PaineWebber, Inc.* v. *American Arbitration Assn.*, 217 Conn. 182, 188 n.10, 585 A.2d 654 (1991); see also Practice Book § 4051; *Barnes* v. *Barnes,* 190 Conn. 491, 493, 460 A.2d 1302 (1983); *Carpenter* v. *Carpenter,* 188 Conn. 736, 739 n.2, 453 A.2d 1151 (1982); *Kaplan* v. *Kaplan,* 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982). "[The defendant's] failure to do so precludes review of this claim on appeal." *PaineWebber, Inc.* v. *American Arbitration Assn.,* supra; see also *DiBella* v. *Widlitz,* 207 Conn. 194, 203–204, 541 A.2d 91 (1988).

required to convey a parcel of property to them on November 9, 1984. The trial court determined that because the defendant was not contesting the validity or enforceability of the contract or the fact that the road was not relocated within five years of the signing of the contract, the only issue was the validity of the defendant's special defenses. Contrary to the defendant's assertion, therefore, the trial court concluded that the defendant had been required to convey the requisite property to the plaintiffs pursuant to paragraph eight.

## II

The defendant next claims that the trial court should have concluded that the defendant's duty to perform was excused. In support of this claim, the defendant argues that: (1) the fact that the relocation of Candlewood Lake Road had not occurred on November 9, 1984, made it impossible at that time to implement the parties' intention that Systems would obtain the land west of the road while the defendant would obtain the land east of the road, and performance by the defendant was thereby rendered impracticable; (2) the state's decision to acquire a greater portion of the eastern property for the reconstruction project than the contracting parties had contemplated frustrated the purpose of the agreement; and (3) the state's acquisition of equitable title to the eastern strip under the doctrine of equitable conversion prior to November 9, 1984, made it impossible for the defendant to convey the eastern wedge to the plaintiffs on that date. We disagree.

### A

The defendant first argues that because relocation of the road had not occurred on November 9, 1984, the purpose of the agreement could not be fulfilled at that time and that performance by the defendant was, therefore, impracticable.

Paragraph four of the agreement provides in pertinent part that "the intention hereof [is] that ALENTER will acquire all land lying Easterly of the relocated Candlewood Lake Road and SYSTEMS will acquire all land lying Westerly of the relocated Candlewood Lake Road." Paragraph one provides the means by which this intention is to be effected. Pursuant to paragraph one, after the relocation occurs, the defendant must convey the property that it owns on the west side of

the relocated road to Systems. The trial court found that paragraph four had been overridden by paragraph eight. Pursuant to paragraph eight, in the event that the proposed relocation has not occurred by November 9, 1984, the defendant must convey the eastern wedge to Systems.

The trial court viewed paragraphs four and eight as independent from one another, the applicability of each dependent upon the occurrence of different events. The trial court implicitly concluded, therefore, that while the parties intended that, following the relocation of Candlewood Lake Road, the defendant would own the land east of the road and Systems would own the land west of the road, their alternative intention was that, if within five years of the execution of the agreement the relocation had not occurred, the defendant would convey a specified portion of the eastern property, the eastern wedge, to Systems.

"The impracticability doctrine represents an exception to the accepted maxim of *pacta sunt servanda,* in recognition of the fact that certain conditions cannot be met because of unforseen occurrences. Cf. *Aetna Casualty & Surety Co.* v. *Murphy,* 206 Conn. 409, 413, 538 A.2d 219 (1988). A party claiming that a supervening event or contingency has prevented, and thus excused, a promised performance must demonstrate that: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. 2 Restatement (Second), Contracts § 261; E. Farnsworth, Contracts (1982) § 9.6, p. 678." *Dills* v. *Enfield,* 210 Conn. 705, 717, 557 A.2d 517 (1989).

Paragraph eight of the agreement expressly acknowledged the possibility that the relocation of the road might not occur within five years. Thus, the event upon which the defendant relies, the nonoccurrence of the relocation project, was foreseen by the parties at the time of the contract. Id., 719. Furthermore, paragraph eight provides that if the relocation does not occur within five years, a specified portion of the eastern property, the eastern wedge, must be conveyed. Contrary to the defendant's assertion, therefore, the inability to ascertain the exact location of the new road did not make performance impracticable.

We conclude that the defendant's duty to perform was not excused by the contracting parties' inability, on November 9, 1984, to ascertain what property would be to the west of Candlewood Lake Road following its reconstruction.

B

The defendant's second argument is that because the state sought to acquire a greater portion of the eastern property than the contracting parties originally contemplated, the purpose of the agreement was frustrated.

Under the doctrine of frustration of purpose, as under the impracticability doctrine, the event upon which the obligor relies to excuse his performance cannot be an event that the parties foresaw at the time of the contract.[7] 2 Restatement (Second), Contracts § 265; E.

---

[7] A party claiming that a supervening event or contingency has frustrated, and thus excused, a promised performance must demonstrate that: (1) the event substantially frustrated his principal purpose; (2) the nonoccurrence of the supervening event was a basic assumption on which the contract was made; (3) the frustration resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. 2 Restatement (Second), Contracts § 265; E. Farnsworth, Contracts (1982) § 9.7, p. 691.

Farnsworth, Contracts (1982) § 9.7, p. 689; see also *Dills* v. *Enfield*, supra. Although the parties, relying on the proposed plans for relocation, may have anticipated that the state would acquire a particular portion of the eastern property in order to relocate the road, the agreement explicitly acknowledged the possibility that the plans for relocation could be altered. See footnote 2, paragraph 9, supra. We conclude, therefore, that because the parties foresaw that the state might acquire a greater portion of the eastern property than originally proposed, the actual occurrence of this event did not excuse the defendant's duty to perform.

## C

The defendant's third argument is that because the state had initiated proceedings to purchase the eastern strip prior to November 9, 1984; see General Statutes § 13a-73 (c); the state had acquired equitable title to the land on that date, which precluded the defendant from conveying the property to the plaintiffs and rendered the defendant's performance impossible.

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 4185. The defendant failed to raise its claim of equitable conversion in the trial court.[8] We therefore decline to review this claim.

---

[8] During trial, the defendant requested that the trial court take judicial notice of a court file that contained a land payment voucher concerning the defendant's sale of the eastern strip to the state. Presumably, because the parties had previously stipulated to the facts, the trial court denied the defendant's request. Following the judgment of the trial court, the defendant filed a motion for rectification of the appeal; Practice Book § 4051; seeking to have the land payment voucher included in the appellate record. The trial court denied the motion and the defendant did not seek review of the decision pursuant to Practice Book § 4054.

Notwithstanding the trial court's ruling, the defendant included the land payment voucher in its brief as support for its assertion that, under the

## III

The defendant next claims that because the trial court improperly concluded that the defense of implied waiver requires proof of the same elements as the defense of estoppel, the trial court improperly rejected the defendant's claim that, by acquiescing in the state's purchase of the eastern strip and by thereafter accepting a quitclaim deed from the defendant respecting the eastern wedge, the plaintiffs impliedly waived the defendant's duty to perform under the agreement.[9] The defendant does not challenge the trial court's conclusion that it failed to prove the elements of estoppel but only its conclusion that the defense of implied waiver requires proof of the same elements. We do not agree.

doctrine of equitable conversion, title to the eastern strip was vested in the state prior to November 9, 1984. On motion of the plaintiffs, however, this court ordered the defendant to refile its brief with any references to the document deleted. Despite our order, the defendant, in its refiled brief, alludes to the land payment voucher in an apparent attempt to gain this court's consideration of its equitable conversion claim.

We note that, in light of the trial court's rulings, the defendant's failure to seek review under § 4054 and our order, the document on which the defendant implicitly relies is clearly outside the record and that, consequently, it will not be considered in this appeal. See *State* v. *Gilnite,* 202 Conn. 369, 379, 521 A.2d 547 (1987); *Hasbrouck* v. *Hasbrouck,* 195 Conn. 558, 560, 489 A.2d 1022 (1985).

[9] At oral argument before this court, the defendant also claimed that the trial court should have found that the plaintiffs had expressly waived the defendant's duty to perform under the agreement. The defendant did not specially plead express waiver; see *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 194, 148 A.2d 554 (1959); *Bernard* v. *Gershman,* 18 Conn. App. 652, 657, 559 A.2d 1171 (1989); *Club Road Corporation* v. *Whitehead,* 34 Conn. Sup. 580, 583, 378 A.2d 110 (1977); nor were the facts, as set forth in the defendant's pleading, sufficient to warrant an inference that the defendant claimed that the plaintiffs had expressly waived their right to the defendant's performance under the agreement. See *Phoenix Mutual Life Ins. Co.* v. *Brenckman,* 148 Conn. 391, 395, 171 A.2d 194 (1961). Having failed to raise the claim of express waiver in the trial court, we decline to review this claim on appeal.

"This court, while recognizing the analytic distinction between express waiver and estoppel, has held that 'implied waivers and estoppels by conduct are so similar that they are nearly indistinguishable.' *S.H.V.C., Inc.* v. *Roy,* [188 Conn. 503, 510, 450 A.2d 351 (1982)]; *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 564, 316 A.2d 394 (1972)." *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.,* 217 Conn. 340, 351–52, 586 A.2d 567 (1991). The defendant has offered nothing warranting a departure from our recent reaffirmation of this principle. In fact, in a memorandum submitted to the trial court, the defendant relied upon our cases that conclude that the doctrines of implied waiver and estoppel are nearly indistinguishable, to support its claim that, like the defense of estoppel, the defense of implied waiver need not be specially pleaded. We therefore decline to address this claim further.

## IV

The defendant next claims that, in light of the plaintiffs' acquisition from the state of a portion of the eastern wedge following the defendant's breach, the trial court should have reduced the amount of damages awarded to the plaintiffs by the value of the acquired property.[10] We disagree.

[10] The defendant frames this claim as a question of mitigation of damages. The defendant does not claim, however, that the plaintiffs failed to exercise reasonable conduct to minimize the damages occasioned by the defendant's breach of the agreement. See *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 332, 514 A.2d 734 (1986); *Camp* v. *Cohn,* 151 Conn. 623, 627, 201 A.2d 187 (1964); *Eastern Sportswear Co.* v. *S. Augstein & Co.,* 141 Conn. 420, 425, 106 A.2d 476 (1954); *Brown* v. *Middle Atlantic Transportation Co.,* 131 Conn. 197, 199, 38 A.2d 677 (1944). It claims, rather, that the trial court, in determining the amount of damages to which the plaintiffs were entitled, should have found that the plaintiffs' subsequent acquisition of a portion of the eastern wedge reduced the amount of damages to which they were entitled. We therefore address the defendant's claim as a challenge to the trial court's calculation of damages.

"The general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed. *Vespoli* v. *Pagliarulo,* 212 Conn. 1, 3, 560 A.2d 980 (1989); *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 317, 541 A.2d 858 (1988); *Danpar Associates* v. *Somersville Mills Sales Room, Inc.,* 182 Conn. 444, 446, 438 A.2d 708 (1980); *Johnson* v. *Healy,* 176 Conn. 97, 105, 405 A.2d 54 (1978); *Bachman* v. *Fortuna,* 145 Conn. 191, 194, 141 A.2d 477 (1958); see also 3 Restatement (Second), Contracts §§ 344 (a), 347 (a) and (b), and comments contained therein." *Rametta* v. *Stella,* 214 Conn. 484, 492–93, 572 A.2d 978 (1990). "Damages for breach of contract are to be determined as of the time of the occurrence of the breach. *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 749, 535 A.2d 1287 (1988); *Gordon* v. *Indusco Management Corporation,* [164 Conn. 262, 264, 320 A.2d 811 (1973)]." *West Haven Sound Development Corporation* v. *West Haven,* supra, 317–18.

The defendant's breach of the contract occurred on November 9, 1984. Had the defendant performed in accordance with the agreement on that date, the plaintiffs would have acquired the eastern wedge. The trial court reasonably determined, therefore, that the amount of damages suffered by the plaintiffs was equal to the value of that property on November 9, 1984. The fact that the plaintiffs thereafter fortuitously negotiated an agreement with the state to acquire a portion of that property is irrelevant to the amount of damages that was previously determined. *Rametta* v. *Stella,* supra, 493. We conclude, therefore, that the trial court properly rejected the defendant's claim that the award of damages should have been reduced by the value of property acquired from the state after the defendant's breach.

## V

In their cross appeal, the plaintiffs claim that the trial court improperly denied their request for an award of prejudgment interest. According to the plaintiffs, the defendant's refusal to perform or to pay damages despite its earlier acknowledgment that it had a duty, under the agreement, to convey the eastern wedge to the plaintiffs, constituted conduct so clearly wrongful as to require a judgment in accordance with the plaintiffs' request for prejudgment interest. We disagree.

Pursuant to General Statutes § 37-3a,[11] interest may be recovered in a civil action as damages for the detention of money after it becomes payable. "We have construed the statute to make the allowance of interest depend upon 'whether the detention of the money is or is not wrongful under the circumstances.' *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971). 'The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court.' *Bertozzi* v. *McCarthy,* 164 Conn. 463, 467, 323 A.2d 553 (1973). We have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was 'wrongful.' *State* v. *Stengel,* 192 Conn. 484, 487–88, 472 A.2d 350 (1984); cf. *Loomis* v. *Gillett,* 75 Conn. 298, 53 A. 581 (1902)." *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 90, 491 A.2d 363 (1985).

---

[11] General Statutes § 37-3a provides in pertinent part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable except as otherwise provided with respect to demand obligations in section 42a-3-122 (4) (a)."

Having found that there was no evidence of bad faith or wrongdoing on the part of the defendant in detaining the money, the trial court refused to award prejudgment interest to the plaintiffs. This finding is adequately supported by the record. Contrary to the plaintiffs' assertion, the defendant initially denied the plaintiffs' allegation that, according to the terms of the agreement, the defendant had been under a duty to convey the property to the plaintiffs on November 9, 1984. Furthermore, the defendant offered various defenses for its nonperformance.

The plaintiffs have failed to apprise this court of any evidence to suggest that the defendant acted in bad faith. We conclude that the trial court reasonably determined that there was no evidence that the defendant had wrongfully withheld money from the plaintiffs and, therefore, that the trial court did not abuse its discretion in refusing to award prejudgment interest to the plaintiffs.

The judgment is affirmed.

In this opinion the other justices concurred.

*(See Appendix on following page.)*

# Appendix

## Surveyor's Certificate

**Property Surveyed for**   MITCHEL J. O'HARA, SR. & MITCHEL J. O'HARA, JR.

**Location**   CANDLEWOOD LAKE ROAD, BROOKFIELD, CONNECTICUT. REFER TO MAP BOOK # 16, PAGE 26 & MAP BOOK # 24, PAGE 38, BROOKFIELD LAND RECORDS.

**Scale**   1" = 40'          **Date:** MAY 17, 1989

STATE OF CONNECTICUT

RONALD H STROL

N 61°45'00" E
44.17

PAR A
03± AC

RELOCATED RIGHT OF WAY LINE

Note: Edge of drive location taken from State of Connecticut map filed in Book 24, pge 38.

PAR B
05± AC

ALENTER INC.

FORMER RIGHT OF WAY LINE

RELOCATED RIGHT OF WAY LINE

APPROXIMATE SOUTH EDGE OF DRIVEWAY

NOTE   BEARING OF N 25°11'13"W CHANGED TO S 26°09'93"E DUE TO SCRIBE'S ERROR.

TOTAL AREA = 079 AC
PARCEL A  = 03± AC
PARCEL B  = 05± AC.

S 60° 14' 20" W — 99 76

STATE OF CONNECTICUT

FREDERICK KOONTZ III