[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST
The plaintiff, Jack L. Mucha, commenced this action in October of 1991 against the defendant, Richard L. Brown, to recover the sum of $60,000 that he had loaned the defendant on May 9, 1987, under an oral agreement that the proceeds of the loan would be used by the defendant to purchase, renovate and sell a residential property in East Dennis, Massachusetts, and that the plaintiff would be repaid at the time the property was sold. Although an early sale had been contemplated by the parties at the time the loan was made, the property remained unsold at the time of trial, and in its memorandum of decision dated July 10, 1997, this court found the issues for the plaintiff based on its conclusion that "the defendant has failed to perform his implied promise to sell the property within a reasonable time of his oral promise to do so [and] that his nonperformance was not legally excused under any of the grounds asserted by the defendant."
The plaintiff claims that the court's findings of fact and conclusions of law justify an award of prejudgment interest of $36,000 for the period from July 1, 1991 to June 30, 1997 under § 37-3a of the General Statutes which provides that "interest at the rate of ten percent a year . . . may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." The defendant's argument in opposition to the plaintiff's motion is that an award of compensatory interest under the statute is not warranted under the circumstances of this case because until the contested legal issues were finally resolved by the court in its decision, the defendant believed in good faith that the money was not "payable" within the meaning of the statute until the property in which the loan proceeds had been invested was actually sold, and that its "detention" was not wrongful based upon equitable considerations.
The allowance of interest as an element of damages is primarily an equitable determination that must be made by the trial court based on whether the interests of justice require the allowance of interest as damages for the loss of the use of money, and the real question in each case is whether the party against whom interest is sought has wrongfully detained money due the other party. Bertozzi v. McCarthy,164 Conn. 463, 466-67 (1973). Because an allowance of statutory prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances, it is a CT Page 9915 factbound determination which lies within the discretion of the trial court after it has heard the evidence, and its familiarity with the facts makes it best able to decide whether an award of interest is appropriate based on the equitable considerations that apply under the particular circumstances of that case. Spearhead Construction Corp. v.Bianco, 39 Conn. App. 122, 134-35 (1995).
The underlying factual circumstances that must be considered by the court in this case in order to determine whether the proceeds of the defendant's loan were wrongfully detained after they became payable are undisputed and may be summarized as follows. The parties had been close personal friends since 1981, and the plaintiff knew that the defendant had not been working since 1975 and that he had no income other than the social security payments that he received because he was totally disabled. The defendant had no prior experience in real estate investment or development, and he used the proceeds of the loan to enter into a joint venture with two other individuals, one of whom was a builder who later withdrew from the venture, and the other was a local realtor, David Mann, who lived in the area and maintained his real estate office a few miles from the property in East Dennis, Massachusetts.
The reasonable expectation of the parties at the time the loan was made was that there would be an early sale, and because Mucha knew that Brown's social security disability payments were apparently his sole source of income, it was reasonable for both parties to assume that the only fund practically available to Brown for the prompt repayment of the principal of the loan would be the proceeds of the resale of the property after it had been acquired, improved and placed on the market. After the renovations to the property had been completed, a deposit was accepted from an interested purchaser on June 1, 1987, and the property was taken off the market for three or four months, but the prospective buyer failed to qualify for a mortgage, and although the property was offered for sale thereafter, the market for Cape Code residential real estate had become extremely depressed and the number and frequency of the sales of such property suffered a dramatic decline in the fall of 1987.
In this connection, Brown's testimony, which the court finds to be credible, was that in the fall of 1987, after the CT Page 9916 first attempt to sell the property proved to be unsuccessful, he tried to get a mortgage on the property to pay off the loans he had received from both the plaintiff and the defendant's sister-in-law that he needed to finance his share in the venture, but that he was unable to do so. It should also be noted that the original investors set up a so-called "Massachusetts trust" on the advice of their attorney that was designated as "BMM Realty Trust" for the purpose of acquiring and improving the property, although Brown was unaware at the time of the fact that the trust instrument had no provision for the repayment of the loan that had been made to him by the plaintiff, and the court also finds as a fact for the purpose of this motion that the defendant's personal intention, at least, has always been to continue to offer the property for sale, but that the cooperation and consent of his co-trustee as an equal owner of the property will be required before a sale can consummated. See 13 Am.Jur.2d, Business Trusts § 57
The original oral agreement between the parties also provided that until the property was sold, the defendant would make monthly interest payments equal to those the plaintiff was paying on the bank equity loans he had obtained in order to make the loan to the defendant, and those payments were made in full until June of 1990, when he was no longer able to continue the payments because he had run out of money after exhausting his credit and equity loan limits. In June of 1991, the plaintiff paid off his bank loans and he was no longer obligated to pay interest on the money he had lent although the defendant was unaware that he had done so until Mucha testified to that effect at an earlier hearing before an attorney trial referee held on July 9, 1993.
The argument made by the defendant at the trial that he had made reasonable efforts to sell the property and that he could not, in any event, satisfy the condition that payment be made in a reasonable time, because the cooperation and consent of his co-trustee was necessary to satisfy both conditions, was rejected by the court as a matter of law because the inability to control the actions of a third person whose consent is required "is ordinarily not considered to be an impossibility that avoids the obligation or excuses liability for its nonperformance." Memorandum of Decision, July 10, 1997, p. 8. The court also ruled that performance is not excused even though the debtor "does nothing to prevent, hinder or delay the sale of the property [because] such a CT Page 9917 result could not possibly be attributable to the parties or within their contemplation at the time the contract was made." Id.
The fact that the court has determined as a matter of law that the sum of money claimed to be due the plaintiff from the defendant is payable is not decisive of the issue of whether the detention of the money is wrongful. See Patron v.Konover, 35 Conn. App. 504, 518 (1994). The court finds, based on its review of the record as summarized above in this opinion, and on the equitable considerations that are applicable under the particular circumstances of this case, that no credible evidence has been presented to suggest that the defendant acted in bad faith or that he wrongfully withheld money from the plaintiff. See O'Hara v. State,218 Conn. 628, 644 (1991).
Under Connecticut law, the plaintiff is not entitled to an award of prejudgment interest on a damage award for the breach of an implied contract where there is no evidence or finding by the trier of fact "that the defendant acted wrongfully or in bad faith in [his] dealings with [the] plaintiff [and where the] parties' relationship was of a nebulous nature stemming from the absence of a written agreement setting forth [the] plaintiff's right to compensation." Brendewiede v. Emery Worldwide, 890 F. Sup. 79,82-83 (D.Conn. 1994). Similarly, under the facts of this case, the defendant's obligation to perform was "nebulous" and unclear because although the amount of the debt was liquidated, the time for performance of his oral promise to pay was not established until the court ruled that he was liable for the nonperformance of his implied promise to sell the property within a reasonable time of his oral promise to do so, and through no fault of either party, there was no provision made for the contingency that the property would not be sold within a reasonable time.
The trial court may properly refuse to award prejudgment interest to the plaintiff where there is no evidence of bad faith or wrongdoing on the part of the defendant and the court's finding is adequately supported by the record Accordingly, the plaintiff's motion for prejudgment interest is denied.
For the foregoing reasons, judgment is entered in favor CT Page 9918 of the plaintiff against the defendant in the amount of $66,980.00 in accordance with the plaintiff's affidavit of debt filed July 22, 1997.
Harry Hammer Judge Trial Referee