## DDS WIRELESS INTERNATIONAL, INC. *v.* NUTMEG LEASING, INC.
### (AC 34278)

Robinson, Bear and Peters, Js.

Argued March 21—officially released September 10, 2013

*Linda L. Morkan*, with whom, on the brief, was *Christopher J. Hug*, for the appellant (plaintiff).

*Matthew Popilowski*, with whom, on the brief, was *Donn A. Swift*, for the appellee (defendant).

*Opinion*

PETERS, J. The principal issue in this appeal is whether a court may authorize a purchaser of goods and services that is dissatisfied with the seller's performance to terminate its contract with the seller, without compliance with the contract's unequivocal termination provision, by invoking the doctrine of frustration of purpose. Under the circumstances of this case, in which the validity of the termination provision has not been challenged, we reverse the judgment of the trial court excusing performance by the purchaser.

On January 19, 2011, the plaintiff, DDS Wireless International, Inc., filed a complaint alleging that the defendant, Nutmeg Leasing, Inc., was in breach of contract, having unilaterally repudiated the parties' service agreement prior to its expiration. The defendant admitted to terminating the service agreement but denied its liability, asserting three special defenses: (1) the plaintiff materially had breached the contract; (2) the purpose of the contract had been frustrated; and (3)

performance was impracticable. After a one day bench trial on January 6, 2012, the court rendered judgment in favor of the plaintiff, but concluded that the purpose of the service agreement had been frustrated and that the plaintiff, therefore, was not entitled to the full contract price. The court excused the defendant from its remaining obligations under the contract and rendered judgment in favor of the plaintiff limited to the amount owed under the contract prior to the defendant's termination of the service agreement. On appeal, the plaintiff claims that it is entitled to the full contract price.

The record reveals certain undisputed facts relevant to this appeal. In 1997, the defendant purchased from the plaintiff a mobile digital dispatch system for use in its operation of a fleet of taxi cabs. The system, composed of computer equipment operating from a central dispatcher location and terminals installed into individual taxi cabs, was designed to facilitate communication between the dispatcher and taxi drivers. At the time of the purchase, the defendant also entered into a service agreement with the plaintiff. That contract provided that the plaintiff would conduct any necessary maintenance of the system for a set period of time. The service agreement, which is the subject of this appeal, required that the defendant make quarterly payments in exchange for the plaintiff's maintenance of the dispatch system.

On June 30, 2006, the parties renewed the service agreement for a period of five years through June 29, 2011. The contract included a termination provision giving either party the opportunity to end the relationship under certain circumstances. The provision provided that "[i]f either party fails to perform its obligations under this Agreement and such failure continues for a period of 30 days after written notice from the other party, the other party shall have the right to terminate this Agreement."

On September 23, 2010, the defendant sent a letter to the plaintiff informing it that it was no longer using the dispatch system and was, therefore, terminating the contract as of September 30, 2010. It is undisputed that this was the first written communication between the parties concerning a termination of the contract and that the defendant did not provide written notice to the plaintiff detailing its failure to perform any of its obligations under the contract. The plaintiff refused to accept the defendant's letter as a termination of the contract and demanded continued payment under its terms. After the defendant failed to pay the remaining nine months of payments owed pursuant to the contract, the plaintiff initiated the present action.

At trial, William Scalzi, a principal of the defendant, testified regarding the propensity of the dispatch system and its components to malfunction, a situation that allegedly created significant problems with the operation of the defendant's taxi business. Although this testimony appears to be a basis for the trial court's ultimate conclusion that the purpose of the contract was frustrated, the record contains no specific findings as to the cause or extent of the malfunctions, the impact of the malfunctions on the defendant's finances, the responsibility of each party for the malfunctions, or any other findings relevant to a determination of a frustration of purpose. We note that neither party sought articulation from the trial court in order to clarify its ruling.[1]

On appeal, the plaintiff claims that the court improperly determined that the purpose of the contract was

---

[1] "It is well established that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 140, 989 A.2d 588 (2010).

frustrated by the high malfunction rate of the taxi cab terminals and that the plaintiff, therefore, is entitled to full contractual damages pursuant to the terms of the contract. The plaintiff argues, inter alia,[2] that the doctrine of frustration of purpose does not apply because the contract's termination provision gave the plaintiff an opportunity to resolve the defendant's claims of malfunctions without providing the defendant an opportunity unilaterally to repudiate the contract. We agree that the court improperly concluded that the defendant was excused from performing its obligations on the basis of frustration of purpose, and, accordingly, we reverse the judgment of the court.

We begin by setting forth the applicable standard of review. "Where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." (Internal

---

[2] The plaintiff also argues that the defendant may not be excused from performance under the contract on the basis of the plaintiff's alleged material breach because the defendant did not plead such a defense or, alternatively, because the plaintiff was not afforded an opportunity to correct the problem with the terminals as required by the terms of the contract. As we have previously explained, the trial court ruled on the basis of the doctrine of frustration of purpose, not on a finding of material breach. Although the defendant argued material breach at trial, the court declined to address the issue.

"When an issue is raised in the trial court but the court declines to address it, an appellate court may consider it if the facts are undisputed and the issue is purely a question of law. . . . When it is unclear from the record whether the trial court based its decision on factual or legal conclusions any decision made by [this court] respecting [the plaintiff's claims] would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 684–85, 911 A.2d 300 (2006). In this case, whether the plaintiff breached the contract involves disputed facts concerning the plaintiff's maintenance of the terminal system and the system's functionality. Furthermore, as we have noted, neither party requested an articulation of the trial court's reasoning with regards to the breach of contract issue. As it is not the function of this court to find facts when the record is devoid of such findings, we decline to review the plaintiff's claim. See *State* v. *Sargent*, 87 Conn. App. 24, 30, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005).

quotation marks omitted.) *Antonino* v. *Johnson*, 113 Conn. App. 72, 75, 966 A.2d 261 (2009). "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Biro* v. *Matz*, 132 Conn. App. 272, 278, 33 A.3d 742 (2011).

At trial, the court found that the defendant "anticipated a working system, and the system didn't work up to par" and that, despite the "best efforts by [the plaintiff] to repair and do the best [it] could . . . [the system] just didn't work. It didn't—it failed." The court concluded that "there's been a failure of the purpose of the contract," but did not articulate what that purpose was or why the defendant was justified in terminating the contract prematurely. Accordingly, we are not persuaded that the court's conclusion that a frustration of purpose excused the defendant from complying with the requirements of the termination provision is supported by the facts that appear in the record.

"[I]n private disputes, a court must enforce the contract as drafted by the parties and may not relieve a contracting party from anticipated or actual difficulties undertaken pursuant to the contract, unless the contract is voidable on grounds such as mistake, fraud or unconscionability." *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 756, 628 A.2d 1298 (1993). "The doctrine of frustration of purpose . . . excuses a promisor in certain situations where the objectives of the contract have been utterly defeated by circumstances arising after the formation of the agreement." *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 350–51, 225 A.2d 797 (1966).

The doctrine of frustration of purpose was first recognized in the turn-of-the-century English case of *Krell* v.

*Henry,* 2 K.B. 740 (C.A. 1903) In that case, a spectator entered into a contract to rent an apartment for the purpose of viewing the procession for the coronation of King Edward VII. When the coronation was postponed and the procession cancelled, the spectator refused to pay for the rental, breaching the contract. Id. When the apartment owner sued, the court excused the breach, holding that the "coronation procession was the foundation of this contract"; id., 751; and that "the object of the contract was frustrated by the non-happening of the coronation and its procession on the days proclaimed." Id., 754. The court implicitly determined that had the parties contemplated the possibility of the coronation being cancelled, they would have included a provision allowing the spectator to terminate the contract under those circumstances. Thus, the doctrine of frustration of purpose, as it originated and has since been applied by Connecticut courts, acts to provide an excuse for nonperformance by a party whose purposes were thwarted by events the parties did not contemplate and could not foresee.[3] See *O'Hara* v. *State,* 218 Conn. 628, 638, 590 A.2d 948 (1991) ("[u]nder the doctrine of frustration of purpose . . . the event upon which the obligor relies to excuse his performance cannot be an event that the parties foresaw at the time of the contract"); 2 Restatement (Second), Contracts § 265, comment (a) (1981) (party claiming that supervening event or contingency has frustrated, and thus excused, promised performance must demonstrate that "the nonoccurrence of the [supervening] event [was] a basic assumption on which the contract was made").

---

[3] A party claiming that a supervening event or contingency has frustrated, and thus excused, a promised performance must demonstrate that: (1) the event substantially frustrated his principal purpose; (2) the nonoccurrence of the supervening event was a basic assumption on which the contract was made; (3) the frustration resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. 2 E. Farnsworth, Contracts (3d Ed. 2004) § 9.7, pp. 652–53; see also 2 Restatement (Second), Contracts § 265 (1981).

The circumstances of the present case do not establish such a frustration of purpose. Here, the parties plainly did contemplate a situation in which the defendant would not be satisfied with the dispatch system or the service provided by the plaintiff. The parties, accordingly, chose to include a termination provision in the contract to give the defendant a legal avenue to end its relationship with the plaintiff.[4] We conclude, therefore, that because the parties foresaw that the defendant might be dissatisfied with the plaintiff's maintenance of the dispatch system, the actual occurrence of this event did not excuse the defendant's duty to perform its obligations under the contract. See *O'Hara* v. *State*, supra, 218 Conn. 639. Furthermore, the defendant does not dispute that it failed to comply with the contract's termination provision. The trial court's determination that the defendant could end the contractual relationship without consequences by a doctrine that was not applicable to the circumstances of the parties, and by an action not contemplated by the contract, was improper.

In light of the foregoing, we conclude that the trial court improperly relied on the doctrine of frustration of purpose in excusing the defendant from the nonperformance of its obligations pursuant to the service agreement. As this was the sole basis for the court's decision, we do not address any alternative theory that might have excused the defendant's nonperformance, if alleged and proved.[5] Any such issues require findings

[4] The relevant provision provides: "If either party fails to perform its obligations under this Agreement and such failure continues for a period of 30 days after written notice from the other party, the other party shall have the right to terminate this Agreement."

[5] For example, we do not consider whether the plaintiff, in furnishing the defendant with allegedly faulty terminals, breached the implied warranties of merchantability or fitness for a particular purpose. See General Statutes §§ 42a-2-314 and 42a-2-315; *Schenck* v. *Pelkey*, 176 Conn. 245, 255, 405 A.2d 665 (1978) ("[a] dealer who sells articles which ordinarily are used in only one way impliedly warrants fitness for use in that particular way" [internal quotation marks omitted]).

of fact and, therefore, must be adjudicated by the trial court.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.