**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JOHN NAVARETTA, individually and )
as Personal Representative of the )
ESTATE OF SABRINA )
NAVARETTA, MARA NAVARETTA, )
                                     )
        Plaintiffs, )
                                     )
        v. )     C.A. No. N24C-01-024 DJB
                                     )
BRITNEY DUONG, PHI SIGMA )
SIGMA, INC., STATE OF )
DELAWARE, UNIVERSITY OF )
DELAWARE, et al., )
                                     )
        Defendant. )

Submitted: August 8, 2025
Decided:  November 6, 2025

*Memorandum Opinion On Defendant*
*State of Delaware's Motion for Summary Judgment –* ***GRANTED***

*Gary S. Nitsche, P.A.*, *James Gaspero, Jr., Esquire*, Nitsche & Fredricks, LLC, Wilmington, Delaware, Counsel for Plaintiffs

*Zachary Collins, Esquire*, Department of Justice, Wilmington, Delaware, Counsel for the State of Delaware

**BRENNAN, J.**

This civil action arises from a motor vehicle collision in which Sabrina Navaretta ("Navaretta"), a University of Delaware student, was killed while driving home from a University sponsored Greek life event called "Airband." Navaretta was a member of the Phi Sigma Sigma, Inc. sorority at the University. While a passenger in a vehicle driven by Defendant Britney Duong, the two were struck by a vehicle driven by Defendant David Sullivan. This collision occurred at the intersection of Library Avenue and Wyoming Road in Newark, Delaware. Tragically, Navaretta passed away from her injuries she suffered in the crash.[1]

Navaretta's family brought suit against the two drivers involved in the crash,[2] the vehicle's manufacturer, the University of Delaware, the Greek organization Phi Sigma Sigma, Inc. (hereinafter "Phi Sigma Sigma"), and the State of Delaware (hereinafter "the State") for each party's allegedly negligent contribution to the fatal collision.[3] The Amended Complaint brings a wrongful death claim and a survival action against all Defendants.[4] The State faces an allegation of gross negligence for its alleged failure to implement a protected arrow at the intersection where the crash

---

[1] *Navaretta v. Duong, et al.*, N24C-01-024 DJB, D.I. 1, ¶¶12-16. For purposes of a Motion to Dismiss, the Court assumes all well pled allegations are true. *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings, LLC*, 27 A.3d 531, 535 (Del. 2011).

[2] Because one of the drivers, David Sullivan, was under 18 at the time of the crash, Plaintiffs assert his negligence is attributable to Kelly M. Scott pursuant to 21 *Del. C*. § 6105 and 21 *Del C*. §6104.

[3] *See* D.I. 115.

[4] *Id.*

2

occurred.[5] The State initially moved to dismiss the claims against it, and alternatively sought summary judgment, arguing the State is immune from liability.[6] Following an afforded period of discovery to explore the issue of immunity, for the following reasons, the State's motion is **GRANTED** as it is immune from prosecution of this suit.

## I.  Relevant Facts

On April 28, 2023 Navaretta attended a Greek life event promoted by the University of Delaware called Airband.[7] Airband is a large dancing competition involving many of the University's Greek organizations, including Phi Sigma Sigma.[8] The University advertised and sponsored Airband to students, requiring the event to comply with all University procedures.[9] Airband was located at the Bob Carpenter Center in Newark, Delaware, which is not directly on the University's campus.[10] The University did not provide transportation for students attending Airband and instead delegated the responsibility to third parties, one being Phi

---

[5] The remaining claims in this action are for willful and wanton misconduct (against Defendants Duong and Sullivan), negligent design, manufacture, and lack of crashworthiness (against the Toyota Defendants), and punitive damages (against the Toyota Defendants).

[6] *See* State's Motion to Dismiss or for Summary Judgment, D.I. 168.

[7] D.I. 115, ¶ 12.

[8] *Id.* at ¶¶ 17, 18.

[9] *Id.* at ¶¶ 17, 19.

[10] *Id.* at ¶ 17.

Sigma Sigma.[11]  The University offered shuttle bus transportation to its students, however, those buses were not operating after the Airband event.[12]

Navaretta traveled from the event as a belted passenger in a 2021 Toyota Corolla driven by Phi Sigma Sigma member Duong.[13]  At the intersection of Library Avenue and Wyoming Road, Duong turned left directly into the path of a vehicle operated by David Sullivan (hereinafter "Sullivan").[14]  The two vehicles collided, inflicting injuries to Navaretta that ultimately caused her death.[15]

## II.    Procedural History

Plaintiffs' initial complaint brings suit alleging wrongful death against Duong for the negligent operation of her motor vehicle,[16] Phi Sigma Sigma under the doctrine of *respondeat superior*,[17] Sullivan for the negligent operation of his motor vehicle,[18] and the University for negligence in that they failed to "provide safe transportation to and from the Airband event."[19]  Plaintiffs also include a claim

---

[11] *Id.* at ¶ 20.
[12] *Id.* at ¶ 30.  Plaintiffs allege the shuttle bus schedules were incomplete and unreliable; had the University ensured those buses were available after Airband, Plaintiffs contend the decedent would have utilized this option instead.
[13] D.I. 115, ¶¶ 11, 13.
[14] *Id.* at ¶14.
[15] *Id.* at ¶16.
[16] D.I. 1, ¶¶12-16.
[17] *Id.* at ¶¶ 22, 23.
[18] *Id.* at ¶ 24.
[19] *Id.* at ¶¶ 19, 25. Given that Defendant Duong faced criminal charges related to the collision when the first complaint was filed, Duong filed an unopposed motion to

against all defendants for willful and wanton misconduct.[20] The initial Complaint did not bring any claims against the State of Delaware.[21] Plaintiffs amended their Complaint on November 7, 2024, to bring claims alleging gross negligence against the State of Delaware.[22]

In lieu of an Answer, on February 14, 2025, the State filed its motion to dismiss or, alternatively, for summary judgment asserting sovereign and qualified immunity from the suit.[23] The State submitted an Affidavit from the State of Delaware's Insurance Coverage Administrator demonstrating no insurance policy exists waiving the afforded immunity.[24]

Plaintiffs filed an opposition on March 6, 2025, asserting the affidavit's submission necessitates converting the motion to one for summary judgment,

---

stay the civil proceedings against her until the resolution of her criminal charges. The stay was later lifted. D.I. 13 and 49.

[20] D.I. 115, ¶¶ 33-35.

[21] *See* Memorandum Opinion on the University's Motions, D.I. 80. In lieu of an Answer, both Phi Sigma Sigma and the University filed a Motion to Dismiss; Plaintiffs opposed each motion. Before argument the parties agreed to withdraw the motion, then following argument a Stipulation of Dismissal was filed for then-Plaintiffs Nicolle Navaretta and Andrew Navaretta, siblings of Sabrina, regarding their respective mental anguish claims against all defendants. Also following argument, the University filed a Motion to Stay Discovery and a Motion for Protective Order requesting relief from taking Duong's deposition considering the Court's decision on Duong's Motion to Dismiss. The University's Motion was denied, rendering the Motion for Protective Order denied as moot.

[22] *See* D.I. 115.

[23] D.I. 168.

[24] *Id.*, Exhibit A.

because the Affidavit does not conclusively show no insurance coverage exists, nor does it preclude discovery.[25] On March 11, 2025, the State replied in agreement with the motion's conversion to summary judgment but notes conversion requirements already consider discovery.[26]

Oral argument was heard on April 24, 2025.[27] At argument, the Court converted the Motion to Dismiss into one for Summary Judgment and the parties were afforded until June 27, 2025, to compete discovery on the issues raised.[28] The parties were to provide the Court with an update no later than July 11, 2025, with respect to the status of this motion post-discovery.[29] Counsel for the State, on behalf of both parties, duly updated the Court on July 11 and requested leave to file supplemental responses to the motion.[30] This request was granted. Plaintiffs' supplemental response in opposition to the current motion was due and filed on July 25, 2025; Defendant State of Delaware's Reply was due and filed August 8, 2025.[31]

---

[25] *See* Plaintiffs' Opposition, D.I. 178.
[26] State's Reply, D.I. 188; *see Furman v. Delaware Department of Transp.*, 30 A.3d 771, 774 (Del. 2011); *Clouser v. Doherty*, 75 A.3d 86 (Table) (Del. 2017); and Super. Ct. R. 56(f).
[27] D.I. 200.
[28] *Id.*
[29] *Id.*
[30] D.I. 224.
[31] *Id.*, D.I. 229, 232.

The parties requested the Court decide the supplemental motions on the papers, therefore this matter is now ripe for decision.

## III. Standard Of Review

Summary judgment is appropriate when the moving party fails to meet its burden to show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[32] If the motion is properly supported, the burden then shifts to the non-moving party to demonstrate there are material issues of fact.[33] This Court will not grant summary judgment if it finds a reasonable indication of a material fact is in dispute after making all reasonable inferences in the light most favorable to the non-moving party.[34]

## IV. Analysis

Plaintiffs' Amended Complaint alleges the State is grossly negligent for improperly maintaining the intersection of Library Avenue and Wyoming Road, contributing to Navaretta's death.[35] Plaintiffs assert the complaint adequately pleads facts showing the State knew of prior collisions, including fatal crashes involving the left-turn lane, and nonetheless failed to implement a protected arrow in the left-

---

[32] Del. Super. Ct. Civ. R. 56(c).
[33] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979) (citations omitted).
[34] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[35] *See* D.I. 168.

7

turn lane at the intersection where Navaretta was killed, breaching the ministerial duty to maintain safe public roadways.[36]

The State of Delaware contends sovereign immunity bars Plaintiffs' claims because it has neither consented to the suit, nor has immunity been waived.[37] The State argues that because no contract of insurance has been undertaken to cover the risk of loss here, immunity has not been waived. The State further argues it is entitled to immunity under the State Tort Claims Act ("STCA").

### a. Sovereign Immunity

Sovereign immunity protects the State of Delaware, or one of its Agencies, from being sued without its consent.[38] While this common law doctrine provides immunity to the State, it can be waived by a legislative Act that clearly evidences the General Assembly's intent to waive immunity.[39] Title 18, Section 6511 of the Delaware Code does just that, and provides that sovereign immunity is waived when an insurance policy exists protecting the State from claims cited in the complaint.[40] Specifically, 18 *Del. C.* § 6511 reads:

> The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured

---

[36] D.I. 115, ¶¶ 32, 35.
[37] D.I. 168, Exhibit A. The State's affidavit suggests no applicable insurance policy exists waiting sovereign immunity under 18 *Del. C.* § 6511 or any other statute.
[38] *Pauley v. Reinoehl*, 848 A.2d 569, 573 (Del. 2009).
[39] *Id.*; De. Const. art. I, § 9.
[40] *Chamberlain v. Pyle*, 2018 WL 1536934, at *1 (Del. Super. Nov. 2, 2018).

8

insurance or by self-insurance, and every commercially procured insurance contract shall contain a provision to this effect, where appropriate.[41]

When no such policy exists, and in response to claims filed against the State, it is common practice for the State to file an Affidavit of the Director of the State of Delaware Insurance Office to this extent, which establishes sovereign immunity.[42] As the originally filed Motion to Dismiss was converted into one of Summary Judgment, the Court can now consider the Affidavit of Marcia Lundy, the Insurance Coverage Administrator of the State of Delaware in determining whether immunity was waived.

The Affidavit filed makes it clear that the State did not take out any additional insurance policy that would cover the incident at bar. Not only does the record include Ms. Lundy's Affidavit, but Plaintiffs had the opportunity to depose Lundy who confirmed this fact on the expanded record. In their supplemental submission, Plaintiffs argue that the Insurance Determination Committee failed in its duties under 18 *Del. C.* § 6503 and therefore, this waiver of immunity should be excused.[43] They continue that § 6503 mandates the Insurance Determination Committee protect the public from "wrongful actions of state officials and employees and failure or

---

[41] 18 *Del. C.* § 6511.

[42] *Parker v. Wireman*, 2012 WL 1536934, at *2 (Del. Super. Apr. 30, 2012).

[43] D.I. 229, ¶ 3.

malfunction of state-owned property" and the State has the burden to show this was satisfied here.[44]

The State correctly disagrees. There is no longer such a requirement placed upon the State in the immunity determination.[45] Plaintiffs' allegation that the Insurance Determination Committee failed to carry out its responsibilities and thus cannot claim a waiver of immunity has been vetted and decided by this Court. In *Suter v. Taylor*, this identical argument was presented and decided in favor of the State. *Suter* concluded that the Supreme Court of Delaware, in its *Doe v. Cates* decision, has abrogated the requirement previously placed upon the State to analyze the efforts of the Insurance Determination Committee.[46]

Having failed to present legal authority to the contrary, Plaintiffs' argument that a showing regarding the Committee's efforts prior to finding a grant of immunity is required fails. Following the period of discovery afforded to Plaintiffs to examine this claim, the record does not support that sovereign immunity has been waived.[47]

---

[44] *Id.*
[45] *Suter v. Taylor*, 2023 WL 2987104 (Del. Super. Ct. Apr. 18, 2023), citing *Doe v. Cates*, 499 A.2d 1175 (Del. 1985).
[46] *Suter*, 2023 WL 2987104 at *3.
[47] *Jackson v. State*, 2000 WL 33115718, at *1 (Del. Super. July 7, 2000).

### b. Immunity under STCA

Analyzing the State's immunity under STCA is only necessary if sovereign immunity is waived.[48] The STCA alternatively immunizes the State from claims of negligence unless a plaintiff can show the State breached a ministerial duty, acted in gross negligence, or acted in bad faith.[49] Ministerial acts are those "which a person performs in a prescribed manner without regard to his own judgment concerning the act to be done,"[50] whereas discretionary acts "require some determination or implementation which allows a choice of methods, or, differently stated, those where there is no hard and fast rule as to course of conduct."[51] Delaware law has routinely found duties related to public safety, when mandated by law or policy, are ministerial rather than discretionary.[52]

---

[48] *Parker*, 2012 WL 1536934, at *1 ("if it is determined that the state has waived sovereign immunity under 18 *Del. C.* § 6551 or another statute, then it is appropriate to next determine whether the limitation on civil liability set forth in the State Tort Claims Act bars the action").

[49] *Horvat v. State Off. of Mgmt. & Budget*, 2017 WL 5068574, at *3 (Del. Super. Oct. 30, 2017) *aff'd sub nom. Horvat v. State of Delaware Off. of Mgmt. & Budget*, 189 A.3d 186 (Del. 2018).

[50] *Gutierrez v. Advanced Student Transportation, Inc.*, 2015 WL 4460342, at *4 (Del. Super. July 14, 2015) quoting *Simms v. Christiana Sch. Dist.*, 2004 WL 344015, at *8 (Del. Super. Jan 30, 2004).

[51] *Id.*

[52] *See O'Connell v. Lebloch*, 2000 WL 703712 (Del. Super. Apr. 19, 2000) (finding inspecting and maintaining the windows of a public school is ministerial not discretionary); *see also Scarborough v. Alexis I. duPont High Sch.*, 1986 WL 10507 (Del. Super. Ct. Sept. 17, 1986) (holding inspecting bleachers on a high school's property is a ministerial duty).

However, because sovereign immunity was not waived, there is no need for the Court now to decide whether the STCA applies.    Once again, the guidance received from the *Doe* Court is instructive:

> At the time the State Tort Claims Act was enacted, the State Insurance Act, including 19 *Del C.* § 6511 … was already in existence.  When the General Assembly enacted the State Tort Claims Act it is presumed to have been aware of the existing law which included 18 *Del C.* § 6511. *DuPont v. DuPont*, Del. Supr.  87 A.3d 394 (1952) waived immunity only as to risks covered by the State Insurance Program.   If 10 *Del. C.* § 4001 were interpreted [to waive immunity], it would have the effect of waiving immunity even in cases where no insurance coverage had been provided under the Insurance Act of 18 *Del. C.* ch. 65.  Such an interpretation would expand the liability the State has agreed to under 18 *Del. C.* ch. 65, and therefore, would be inconsistent with the stated purpose and the title of the Tort Claims Act, including liability.[53]

The State Tort Claims Act does not act to satisfy a waiver of immunity under the standards delineated above, which would be Plaintiffs only avenue for relief in suit against the State, therefore the State is immunized from this civil action.

---

[53] *Doe*, 499 A.2d at 1181.

## V. Conclusion

As a result of the above findings, summary judgment is be **GRANTED** in the State's favor.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

cc:     All counsel via Lexis File & Serve