*321 OPINION OF THE COURT
Martin B. Stecher, J.
This action for breach of contract was previously tried without a jury and by decision dated November 21, 1986, I determined that the plaintiff was not entitled to recover on his contract. However, at the end of the plaintiff’s case he moved to amend his pleadings to conform to the proof (CPLR 3025 [c]) by inserting in the complaint a cause of action for quantum meruit. The motion to amend the complaint during trial was denied; for, to confront the defendant with a new, unpleaded cause of action, at that stage was to take the defendant by surprise, and to allow the amendment then would have been unjust. As pointed out, however, in the decision after trial, "CPLR 3025 (c) contemplates just such a situation in which the evidence demonstrates an entitlement to a quantum meruit award and the motion to amend takes the defendant by surprise; for the statute allows such a motion upon such terms as may be just including the granting of costs and continuances.”
A date for continuation of the trial was fixed to allow the defendant to produce evidence relevant to the added cause of action in quantum meruit. On the day of the continued trial, the attorney for the defendant chose to rest rather than introduce further evidence and moved to dismiss the case on the ground that "a party may not disregard a contract both valid and enforceable and recover in a separate cause of action for quantum meruit”. In support of this proposition, he cites Farm Automation Corp. v Senter (84 AD2d 757), Knoll v Cape Cod Sea Food Rest. (35 AD2d 976), Jontow v Jontow (34 AD2d 744), Hohenberg Co. v IWAI N. Y. (6 AD2d 575) and Abinet v Mediavilla (5 AD2d 679).
The Abinet case (supra) articulates the proposition which each of the cited cases stands for or enunciates and that is "[n]o contract will be implied in law where an express and enforceable contract exists between the same parties as to the same subject matter and where a conflict would result”. (Supra, at 680; emphasis supplied.)
In each of the cited cases, 1 of 2 circumstances existed: either the obligation of the defendant was to make payment upon the completion of certain specified work, or compensation was to be calculated in a specific manner. In each case, the plaintiff sought to utilize a different method of computation or justify payment on a basis other than that contained *322 in the contract. Thus, in Abinet (supra) the plaintiff was a contractor who failed to perform his construction agreement and was not permitted to sue in quantum meruit and not on the contract itself. In Jontow (supra) attorneys who agreed to share a fee equally were not allowed to seek a greater proportion in quantum meruit.
There is little doubt that the law is substantially as the defendant contends; namely, that a person who is a party to a contract which provides for the work to be done and the circumstances under which compensation is to be paid may not avoid the contract and seek payment in quantum meruit. The difficulty, however, is not with the theory but its applicability to this case.
Although the facts are fully set forth in the opinion of November 21, 1986, a brief recitation of them here is appropriate. The defendant was a prominent restaurateur located on West 52nd Street in New York City. The building in which he was a restaurant tenant was acquired as part of the assemblage which eventually became the Equitable Building on 7th Avenue between 52nd and 51st Streets in Manhattan. At a time when Manuche had approximately 20 months to the end of his lease, representatives of the assembler offered him $100,000 for the surrender of his lease, and about 4 months thereafter raised the offer to $250,000. Manuche knew that he lacked the skills and background to negotiate such a transaction and he entered into an agreement with Knobel to act as Manuche’s real estate advisor. The agreement, which was eventually reduced to writing, provided in part that the plaintiff would represent the defendant "as real estate Consultant, in an endeavor to secure a cash payment from your landlord * * * In the event that you at your sole discretion agree to a settlement, whether it be cash or other valuable consideration * * * I will receive a percentage of the total value of said consideration as follows”. The agreement then set forth a graduated scale of compensation. The plaintiff agreed "to absorb all legal fees including tax and/or accounting advice” and agreed to render other assistance not now relevant.
Knobel estimated the value to Equitable of an early surrender of Manuche’s lease to be $2 million or more. His negotiating strategy therefore was to ask for $3.2 million. Equitable raised the offer to about $300,000 and eventually made a "final” offer of $1 million. Manuche, on Knobel’s advice, rejected these offers holding out at all times for $3.2 million as *323 advised by Knobel. Equitable began a war of nerves against Manuche, erecting a scaffolding around the entrance to his restaurant and installing soil boring equipment immediately adjacent to its entrance. Knobel, in accordance with the terms of his contract and at his own expense, retained counsel to obtain an injunction against such harassment and eventually, although no litigation ensued, was successful in having the soil boring equipment and the scaffolding removed.
When Manuche on Knobel’s advice rejected the $1 million offer, the transaction was at an end.
Some months after the termination of negotiations, the defendant went to his friend and customer Richard Fugazy who brought his friend the late Roy Cohn, Esq., into the matter. In the language of a witness, Cohn "interfaced” with the president of Equitable and obtained for Manuche an offer of $1,175,000, all cash, which Manuche accepted. The surrender of lease agreement occurred when there were fewer than four months left to the normal expiration of the lease.
Manuche paid Fugazy $100,000 for the services rendered by Fugazy and Cohn.
Under the language of the agreement and the circumstances of the case I held that Knobel had not produced the offer which was ultimately accepted and was not entitled to compensation under the terms of his contract; but that he had rendered a valuable service to the defendant for which provision had not been made in the contract and Knobel was entitled to be compensated for the value of his services to the defendant.
There are two classes of implied contracts. "[0]ne class consists of those contracts which are evidenced by the acts of the parties and not by their verbal or written words — true contracts which rest upon an implied promise in fact. The second class consists of contracts implied by the law where none in fact exist — quasi or constructive contracts created by law and not by the intentions of the parties.” (Miller v Schloss, 218 NY 400, 406.) What we deal with here is the first of the two categories, that is, an implied promise in fact. (The second is limited to cases in the nature of unjust enrichment where the law imposes a promise where none is created either expressly or by the facts.) As stated in Miller v Schloss, "[a] contract cannot be implied in fact where the facts are inconsistent with its existence; or against the declaration of the party to be charged; or where there is an express contract covering the subject-matter involved”. (Supra, at 406-407.)
*324 The doctrine by which we reject contracts implied in fact "where there is an express contract covering the subject-matter involved” (Miller v Schloss, supra, at 406-407) finds its earliest authoritative enunciation in Smith v Brady (17 NY 173). In a concurring opinion (concurred in by all members of the court) Judge Comstock said, "in this state the sanctity of contracts in this respect at least, has been steadily maintained, and no encouragement has ever been given to that loose and dangerous doctrine which allows a person to violate his most solemn engagements and then to draw the injured party into a controversy concerning the amount and value of the benefits received.” (Supra, at 186.) The court continued, "To hold a different doctrine would be simply to make another contract, and would be giving to parties an encouragement to violate their engagements, which the just policy of the law does not permit.” (Supra, at 187.) Many examples of such conduct are given on page 188 of that opinion and every one of them involves the abandonment of an undertaking or violation of the terms of a contract without just cause where the person in breach would thereafter not be permitted to recover on a contract implied in fact.
It is clear from Smith v Brady (supra) and the cases which followed it that what the law seeks to avoid is a plaintiff who has violated the terms of his own agreement and then seeks compensation for the value of work done. But that is not Mr. Knobel’s case. In no sense did he violate the terms of his agreement or abandon it; indeed, he pursued it with greater vigor and although it was not for him to consummate the deal, there can be no question, from the evidence in this case, that it was his efforts which brought forth the rejected offer of $1 million and which set the stage for the final, satisfactory offer of a little more money. Not only did Mr. Knobel pursue his undertaking but he did as he had promised to do, engaging counsel at his own expense to defend the viability of the defendant’s restaurant thereby preventing a forced, involuntary termination of the lease.
In no sense can it be said that Knobel is seeking payment on an implied contract in violation of "his most solemn engagement” (Smith v Brady, supra, at 186). Nor can it be said that allowing a recovery to Knobel on the theory of a contract implied in fact is in conflict with the express contract of the parties. The express contract provides for a mode of compensation should Knobel be successful in obtaining the surrender of the lease at a price acceptable to Manuche. It *325 was not Knobel who abandoned the negotiation but the Equitable Life Assurance Society. Knobel did all that was expected of him, and was most instrumental in securing the final satisfactory result. The contract is silent on what would occur if, following the efforts made by Knobel, Manuche was able to obtain a price based both on Knobel’s efforts and the efforts of another. In no sense can it be said that an award to Knobel on an implied contract results in a conflict with the written contract (see, Abinet v Mediavilla, 5 AD2d 679, 680, supra).
As indicated above, the various cases cited by the attorney for the defendant do not appear to be relevant to the facts of this case.
A more nearly parallel and relevant authority is Polley v Plainshun Corp. (8 AD2d 638) where a broker, who under ordinary circumstances, would not have been entitled to compensation except upon success (Rusciano Realty Servs. v Griffler, 62 NY2d 696) was held, subject to proper proof, to be entitled to compensation on a contract implied in fact where his brokerage efforts were frustrated by a taking in condemnation but where the client obtained an increased award due to the broker’s efforts.
The instant case is much more akin to the Polley case (supra), the common thread being that in neither did the plaintiff abandon the work nor fail to perform his undertaking; that the work was frustrated by the efforts of another; and that the defendant secured a benefit from plaintiff’s efforts.
Taking into account all of the circumstances of this case, the final conclusion reached with the assistance of others, and the fee paid by Manuche to Fugazy and Cohn, I find that the fair and reasonable value of Knobel’s services to Manuche, including his disbursements for legal fees and other expenses, aggregates $30,000.
I previously reserved decision on the "terms” to be imposed by reason of the delayed motion of the plaintiff for leave to amend his complaint at the end of the plaintiff’s case (CPLR 3025 [c]). I find that the additional time necessarily spent by the attorney for the defendant in an additional court appearance, preparation of a memorandum of law and the like, will be adequately compensated by an allowance of $2,000.
Accordingly, the clerk is directed to enter judgment in favor of the plaintiff against the defendant in the sum of $28,000.