■ FRANKLIN E. KNOBEL, Doing Business as FIRST LEASEHOLD MANAGEMENT COMPANY, Respondent, v GEORGE J. MANUCHE, JR., Appellant.—Order, Supreme Court, New York County (Martin B. Stecher, J.), entered November 2, 1987, which, after a nonjury trial, directed the clerk to enter judgment in plaintiff's favor in the sum of $28,000, unanimously affirmed, with costs and disbursements.

While we do not believe an action in quantum meruit lies, we are of the view plaintiff Knobel established that defendant Manuche breached his contract with Knobel, and thus affirm the judgment, albeit for reasons other than those upon which the trial court relied.

Knobel executed a written agreement with Manuche by which he undertook to negotiate a buyout of Manuche's lease with the Equitable Life Assurance Co., which was assembling real estate parcels preparatory to constructing an office tower. Manuche's restaurant was located in a building which Equitable had purchased, and 11 months remained on the lease in November 1981 when the agreement was executed. The agreement provided, in relevant part:

"It is anticipated that your landlord may wish you to agree to terminate your lease on the above premises prior to its expiration date of October 31st, 1982. In the event that you at your sole discretion agree to a settlement, whether it be cash or other valuable consideration, that I will receive a percentage of the total value of said consideration as follows:

"from     $     00 to   $ 500,000.   5%
"from    $500,001. to   $1,500,000.  10%
"All in excess of      $1,500,000   15%".

Knobel also agreed to absorb all legal fees and to negotiate a new lease for any restaurant in the New York metropolitan area within two years at no cost or expense to Manuche.

Knobel undertook negotiations with Tishman Realty, Equi-

table's agent. At trial Knobel testified that he believed that an early lease surrender would be worth $2,000,000 to Equitable because it would then be able to start construction in the spring of 1982, rather than waiting until the fall of the same year. He stated he did not believe Equitable would make a serious offer until the early spring, so his strategy was to demand $3,200,000 until that time. Thus, he rejected Equitable's latest offer of $1,000,000 on November 1981, which had been raised from the $300,000 originally proposed in July 1981. In February 1982 Equitable installed a boring machine on the sidewalk adjacent to the restaurant and commenced test borings, apparently partially in an attempt to frighten Manuche into accepting its offer. Knobel retained attorneys to enjoin, successfully, the placement of the equipment, and paid the bill himself, as the agreement required.

In March, concerned both that only seven months remained on the lease and also by the absence of any recent negotiations between Knobel and Tishman, Manuche turned to a friend and fellow restaurateur, Richard Fugazy, who referred him to attorney Roy Cohn. Cohn obtained an offer of $1,175,000 cash, or $1,300,000 over three years. Manuche accepted the former offer. Fugazy was paid $100,000 for his services.

In October 1982 Knobel sued in contract for $85,000, which would have been his compensation under the formula contained in the written agreement for a buyout at $1,100,000, apparently the figure Knobel had been informed Manuche received. No relief under quantum meruit was sought. After the close of plaintiff's proof in the September 1986 trial (cross motions for summary judgment had been denied earlier), the court granted his motion to conform the pleadings to the proof to raise the ad damnum clause to $92,500, but denied his motion to amend the complaint to assert a cause of action for quantum meruit, finding that defendant would be prejudiced. At the end of the trial, however, the court rejected plaintiff's contract action but reconsidered the motion to amend, and directed a reopening of the trial at a later date to allow defendant time to prepare a defense to the claim in quantum meruit.

After this portion of the trial, the court found Knobel was entitled to $30,000 in quantum meruit, less $2,000 in costs incurred by defendant attributable to the delay in plaintiff's motion to amend the complaint. Although the court acknowledged that a quantum meruit recovery is barred where a valid express contract exists between the parties, it found that the doctrine did not apply where a plaintiff did not breach his

obligations under the contract, and the parties' contract did not provide compensation for the valuable services of the nature Knobel afforded to Manuche, even though he did not effect the final agreement with Equitable.

As this court has made clear, "where there is an express contract no recovery can be had on a theory of implied contract" *(Hohenberg Co. v Iwai N. Y.,* 6 AD2d 575, 578; *see also, Larme Estates v Omnichrome Corp.,* 250 App Div 538, 540, *affd* 275 NY 426). An exception lies where the defendant has frustrated the plaintiff's performance of his duties under the contract *(Carvatt v Lippner,* 82 AD2d 818). Nothing in this record indicates that such a finding could be made here, since Manuche was free, under the agreement, to negotiate for himself or to retain others in his behalf. At no point did Manuche ever frustrate Knobel's negotiations, or attempt to circumvent him. At the time he approached Fugazy, the negotiations between Knobel and Equitable were at an apparent standstill.

Yet, while Manuche was free to explore other avenues of negotiation, he was still obligated to pay Knobel under the terms of the contract. The agreement is quite clear that if Manuche agreed to a settlement (which was within his sole discretion), Knobel was entitled to a commission based upon the settlement figure. The agreement did not require that Knobel be the party who actually effectuated the final agreement, nor did it set a date beyond which he was no longer entitled to compensation. The only consideration required was his services as a consultant, which he performed, and his absorption of all legal fees incurred, which he paid. Once the settlement was reached his commission was earned. While any negotiations by Knobel had been dormant for a while, the premise of his strategy, that Equitable would wish to commence construction in the spring rather than the fall, would appear to have been a factor in Equitable's offering $875,000 more than its original offer, and $175,000 more than its most recent offer.

Thus, Knobel was entitled to a commission of $92,500. Under CPLR 5501 (a) this court has the power to review the court's dismissal of the contract action, even though Knobel did not appeal from that order. Inasmuch as Knobel was apparently content with receiving $28,000, regardless of the theory employed by the court, we believe that it would be inappropriate to raise the amount of the judgment to the commission specified in the contract. Concur—Kupferman,

J. P., Sullivan, Ross, Carro and Smith, JJ. *[See,* 137 Misc 2d 320.]