■ UNISYS CORPORATION, Respondent-Appellant, v HERCULES INCORPORATED et al., Appellants-Respondents. [638 NYS2d 461] —Judgment of the Supreme Court, New York County (Alice Schlesinger, J.), entered October 18, 1994, upon a jury verdict in favor of plaintiff and against defendants in the amount of $7,349,553.19, inclusive of pre-verdict interest at the rate of

7% per annum from December 31, 1986 and post-verdict interest at the rate of 9% per annum from March 3, 1994 to the date of entry of judgment, and which, *inter alia*, adjudged that defendant Hercules Defense Electronics Systems, Inc. shall have judgment against plaintiff Unisys, dismissing the first and second causes of action of the complaint on the merits, unanimously modified, on the law, the complaint dismissed, and judgment vacated, without costs.

This action arises out of the sale by plaintiff Unisys of its subsidiary, SP-Microwave, Inc. to defendant Hercules Incorporated, which renamed it Hercules Defense Electronics Systems, Inc. Insofar as is relevant on appeal, plaintiff seeks to recover funds advanced to SP-Microwave during the transition period—after signing of the stock purchase agreement and before closing—on the theory that the advancement constitutes an inter-company liability (in the nature of a loan). It is asserted that SP-Microwave had an obligation to repay the amount advanced (claimed to exceed $7 million), and the first cause of action alleges that Hercules is liable for this obligation. Plaintiff's second cause of action alleges breach of a provision of the stock purchase agreement wherein Hercules agreed to indemnify Unisys against "losses" arising out of the ownership or operation of SP-Microwave during the transition period. The sixth cause of action is predicated on a theory of unjust enrichment.

Supreme Court (Beverly Cohen, J.) dismissed plaintiff's third, fourth and fifth causes of action as a matter of law and denied the parties' summary judgment motions. This Court affirmed the order, finding that questions of fact were presented regarding past business practices and whether the advancement of funds constitutes losses within the contemplation of the parties' agreement (*Unisys Corp. v Hercules Inc.*, 199 AD2d 14). The dispute was the subject of a lengthy trial on plaintiff's remaining causes of action and a counterclaim interposed by defendant. Judgment was entered in favor of plaintiff on its sixth cause of action based upon findings that the advancement of moneys by plaintiff does not constitute a loan; that the advances are not "losses", requiring adjustment of the purchase price pursuant to the terms of the stock purchase agreement; and that defendant obtained a benefit from the advancement of funds to which it was not entitled. In the order appealed from, Supreme Court denied defendant's motion for judgment *non obstante veredicto (n.o.v.)* on the sixth cause of action for unjust enrichment and denied plaintiff's cross motion for judgment *n.o.v.* or, in the alternative, for a new trial

on the first and second causes of action predicated upon the written contract.

As a preliminary matter, "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter" (*Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 388, citing *Blanchard v Blanchard*, 201 NY 134, 138). An exception is made for compelling equitable circumstances, such as frustration of performance (*see, Knobel v Manuche*, 146 AD2d 528, 530, citing *Carvatt v Lippner*, 82 AD2d 818), which are not present in this case. Even where a plaintiff may seek recovery on alternative theories, he must make an election of remedies at trial (*Baratta v Kozlowski*, 94 AD2d 454, 464; *see also, Carvatt v Lippner, supra*) or upon submission of a motion for summary judgment (*H.B.L.R., Inc. v Command Broadcast Assocs.*, 156 AD2d 151), the grant of which is " 'the procedural equivalent of a trial' " (*Capelin Assocs. v Globe Mfg. Corp.*, 34 NY2d 338, 341).

Plaintiff does not maintain that its contract with defendant is unenforceable and, thus, cannot establish its claim for damages based upon the inconsistent theory of unjust enrichment. As the Appellate Division, Third Department, observed, "if this were possible any contractor who had made a poor contract could ignore it and recover in *quantum meruit*. Without in some manner removing the express contract from the picture in the normal fashion (rescission, abandonment, etc.) it is not possible to ignore it and proceed in *quantum meruit*" (*La Rose v Backer*, 11 AD2d 314, 320, *amended* 11 AD2d 969, *affd* 11 NY2d 760).

As a second consideration, the interpretation of the terms of a contract is normally the province of the court, unless a provision is ambiguous, requiring parol evidence of the parties' intent. The relevant rule is stated in *Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.* (81 AD2d 168, 180, *lv dismissed* 55 NY2d 602): " '[w]here the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and * * * no trial is necessary to determine the legal effect of the contract [citations omitted]' * * * 'Mere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact.' "

The parties have stated (stock purchase agreement § 8.12) that their written contract constitutes "the entire agreement

between the parties" and (§ 2.1.23) that "the Seller makes no other representations or warranties" with respect to the transaction. What is at issue in this controversy is whether the advancement of funds by plaintiff to its subsidiary during the transition period falls within plaintiff's obligation, under the contract, to fund the subsidiary "in the ordinary course of business" (§ 3.1). Francis Kennedy, controller of SP-Microwave and vice-president of financial and business administration of its successor, defendant Hercules Defense Electronics Systems, Inc., testified that, as stated in his affidavit dated April 21, 1992, "The advances made between September 30, 1986 and December 22, 1986 were as Unisys alleges made in accordance with the historical pre-September 30, 1986 practice of advancing operating funds and other assets". Likewise, Robert Griffiths, accounting manager of SP-Microwave, testified that the balance sheet reflects that "the obligations of SP-Microwave were being funded by Unisys * * * And this practice had been consistent with the three prior years of financials that we had." On appeal, plaintiff concedes, "These advances were made in accordance with long-standing historical practice."

Something which is done as a matter of corporate historical practice is, as a matter of law, done "in the ordinary course of business". The analogy, should one be required, is to a course of dealing, "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct" (UCC 1-205 [1]). Upon the record before us, there is no dispute as to plaintiff's historical practice, and its contractual obligation to fund SP-Microwave "in the ordinary course of business" is unambiguous. Thus, interpretation of the agreement presents a question of law for the court (*West, Weir & Bartel v Mary Carter Paint Co.*, 25 NY2d 535, 540; *Eden Music Corp. v Times Sq. Music Publs. Co.*, 127 AD2d 161, 164).

In the law of contracts, the parol evidence rule is "[a]n important principle of substantive law" (*Fogelson v Rackfay Constr. Co.*, 300 NY 334, 338), not merely a rule of evidence. Having declared the contract to be the entire agreement, the law regards it as not merely the best but the exclusive evidence of the parties' intent (300 NY, *supra*, at 340). As stated by Professor Corbin, "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the

purpose of varying or contradicting the writing" (3 Corbin, Contracts § 573 [1960]).

In this case, plaintiff failed to establish any ground upon which extraneous testimony might be received (*see, Potsdam Cent. Schools v Honeywell, Inc.,* 120 AD2d 798, 800 [Levine, J.]). Clearly, a provision which would enable plaintiff to recoup over $7 million in a sale valued at $42 million is " 'one which the parties would ordinarily be expected to embody in the writing' " (*Fogelson v Rackfay Constr. Co., supra,* at 338). Furthermore, plaintiff must be presumed to be familiar with its own corporate practice. Simply put, had plaintiff desired to recoup funds it advanced to its subsidiary "in the ordinary course of business", as a matter of "long-standing historical practice", it should have included an express provision to that effect.

Plaintiff's reliance on this Court's decision in *Joseph Sternberg, Inc. v Walber 36th St. Assocs.* (187 AD2d 225) is misplaced. That case involved a provision to pay a real estate broker $450,000 "should it effect such sale for a price of no less than $11.5 million". The language presents an ambiguity as to whether sale at the specified price is a condition precedent to the obligation to pay the broker a fee, in which instance the broker is required to strictly comply with its requirements (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.,* 86 NY2d 685), or whether the provision merely sets the amount of the broker's fee in the event the seller receives the stated price. Thus, the case presents a question with respect to not only the terms but also the existence of a contractual obligation (*see also, Sforza v Health Ins. Plan,* 210 AD2d 214).

The doctrine of unjust enrichment applies to circumstances in which the parties have entered into an ostensible contractual relationship but their agreement ultimately proves to be invalid or otherwise inapplicable. For example, where recovery was sought under a contract of employment that was subsequently found to be void for violation of the Statute of Frauds, the plaintiff was permitted to seek recovery in quantum meruit (*Smith v Kirkpatrick,* 305 NY 66; *see also, Carvatt v Lippner, supra*). In the instant matter, by contrast, plaintiff seeks to add to the express, enforceable and unambiguous terms of the stock purchase agreement a provision that would permit it to recover for its advancement of funds to its subsidiary. This subject is governed, generally, by the contract provision that plaintiff fund the subsidiary in the ordinary course of business (§ 3.1) and, as asserted by Unisys in its complaint, specifically by the indemnification provision (§ 5.2), which both recites that it is an exclusive remedy and incorporates by reference a

detailed statement of the parties' "Liabilities and Obligations" (Schedule 5.2). As such, plaintiff seeks to add to the terms of the integrated agreement, in contravention of the parol evidence rule. As this Court has consistently and succinctly stated the maxim, " 'where there is an express contract no recovery can be had on a theory of implied contract' " (*Knobel v Manuche, supra*, at 530; *H.B.L.R., Inc. v Command Broadcast Assocs., supra*, at 152).

The judgment in favor of plaintiff on the sixth cause of action must be reversed. As to the appeal from the denial of plaintiff's cross motion, this Court is in complete agreement with Supreme Court that the record contains evidence from which the jury could reasonably conclude that the advances in question constitute neither "loans" nor "losses" subject to the indemnity provision of the contract. Concur—Ellerin, J. P., Rubin, Nardelli and Mazzarelli, JJ.