COURTIEN COMMUNICATIONS, LTD., Plaintiff,

v.

AETNA LIFE INS. CO., Defendant.

No. CV 98–6689(ADS)(WDW).

United States District Court, E.D. New York.

Feb. 5, 2002.

David Lazer, Lazer, Aptheker, Feldman, Rosella & Yedid, LLP, Melville, NY, for plaintiff.

Robert M. Tils, Moritt, Hock & Hamroff, LLP, Garden City, NY, for defendant.

## MEMORANDUM & ORDER

WALL, United States Magistrate Judge.

Before the Court is a motion for partial summary judgment by the defendant, Aetna Life Insurance Company, seeking dismissal of plaintiff Courtien Communications' First Claim for Relief, sounding in breach of contract, "to the extent that said claim seeks damages based upon any telecommunications services provided to Aetna by AT & T," and dismissal of the Second Claim for Relief, sounding in unjust enrichment, in its entirety. The parties have consented to jurisdiction by the undersigned for all purposes of this litigation. This dispositive motion is thus before the undersigned on consent, and has not been referred by a district court judge. For the reasons set forth below, the motion is denied in its entirety.

## BACKGROUND

This action arises from a contractual relationship entered into by the parties on March 6, 1998. In the Agreement signed on that date, the plaintiff is described as "an independent telecommunications consulting firm specializing in telecommunications bill auditing." See Agreement, Tils Aff. in Supp., Ex. C at 1. Pursuant to the Agreement, the plaintiff would "perform telecommunications bill audits for [certain] Aetna telecommunications services" and, if possible, would "recommend to Aetna specific opportunities to reduce Aetna's costs" for those services. Id. The term of the Agreement was one year (see id. at § 2.1), but it provided for termination by either party at any time "upon thirty (30) days written notice to the other party." Id. at § 2.2. By letter dated July 16, 1998, Aetna informed Courtien of its wish to terminate the Agreement. See Ex. C to Complaint; see also Aetna's Rule 56.1 Statement at ¶ 4.

Courtien does not dispute the right of Aetna to terminate the Agreement, but does allege a breach during the course of the Agreement, claiming that Aetna "wrongfully restricted [Courtien's] activities, improperly revoked much of the authority it had granted to [Courtien], and otherwise wrongfully interfered with [Courtien's] abilities to fulfill its obligations under the agreement." Complaint at ¶ 14. The alleged breach of contract is the First Claim in the Complaint. Courtien also claims unjust enrichment. The Complaint does not set forth details relating to specific telecommunications companies or Courtien's audits of those companies.

Based on the Rule 56.1 Statements [1] and the affidavits submitted by the parties' attorneys, which annex documentary and testimonial evidence, the parties agree that they entered into an agreement on March 6, 1998, and that Aetna terminated the agreement on July 16, 1998. They also agree that Aetna issued a letter of authorization to AT & T, allowing Courtien to receive information necessary to its audit, but that such authorization was later revoked.

## DISCUSSION

*Summary Judgment Law:*

" 'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.' " *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F.Supp.2d 174, 180 (E.D.N.Y.2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir.1998) and citing Fed.R.Civ.P. 56(c) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. See *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. See *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996).

The trial court's responsibility is " 'limited to discerning whether there are any genuine issues of material fact to be tried,

---

1. The Court notes that an Amended Rule 56.1 Statement was submitted by plaintiff after defendant's reply papers were served, and it was accepted by the Court, with consent of the defendant. See Tils Letter dated Dec. 19,

2000 and Lazer response, dated Dec. 21, 2000. The arguments set forth in those letters regarding Aetna's renegotiation of its VTNS Agreement with AT & T have been duly noted.

not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir.1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F.Supp.2d at 180 (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). It is against this standard that the Court considers the motion for partial summary judgment.

### *Plaintiff's Breach of Contract Claim as Applied to AT & T*

As noted earlier, the Complaint does not contain allegations as to Courtien's work with specific telecommunications companies on Aetna's behalf. Two years of discovery have, however, resulted in a record with regard to specific carriers, and this motion for partial summary judgment on the breach of contract claim is limited to that claim's applicability to damages based on "any telecommunications services provided to Aetna by AT & T." Tils Aff. in Supp. at 10. Aetna argues that Courtien has not produced and cannot produce "any evidence in admissible form sufficient to establish its prima facie case for breach of contract relating to any AT & T accounts." Def. Mem. of Law in Supp. at 7.

█ The Agreement between the parties contains a Connecticut choice of law provision, and both parties agree that Connecticut law applies to the breach of contract claim. See Agreement at § 6.1. Under Connecticut law, in order to establish a prima facie claim of breach of contract,

Courtien must show: (1) the existence of the agreement; (2) breach of the agreement by Aetna; and (3) that Courtien was damaged by the breach. *See Chem–Tek, Inc. v. General Motors Corp.,* 816 F.Supp. 123, 131 (D.Conn.1993) (applying Connecticut law). On this motion, then, the defendant must show that there is no triable issue of material fact as to any of these three elements. The parties agree that a contract existed. Aetna argues, however, that the discovery record contains no evidence of a breach, and that even if some triable issue of fact as to a breach related to AT & T could be inferred from that record, Courtien cannot prove that its alleged damages were proximately caused by Aetna. Def. Mem. in Supp. at 7–8. For the reasons set forth herein, the Court disagrees.

### *Issues of Material Fact as to the Alleged Breaches:*

As to the element of breach, Aetna argues that its only obligation under the Agreement was to provide letters of authorization to the seven telecommunications companies enumerated in the Agreement, including AT & T (see § 3.5 and Schedule 1), and to pay Courtien for any "savings" or "refunds" Courtien obtained for Aetna, as those terms are defined in the Agreement (see §§ 3.2 & 3.3). Def. Mem. in Supp. at 8. Aetna claims that it fulfilled both obligations, and thus no breach can be established. Id.

Courtien, while it does not dispute that Aetna initially issued a letter of authorization to AT & T (Lazer Aff. in Opp. at ¶ 7), or that Aetna did pay Courtien for the invoices it submitted, argues that these were not Aetna's only obligations, and that Aetna breached the terms of the agreement in at least three ways, proximately causing damage to Courtien. Plaintiff's Mem. of Law in Opp. at 5–16. Courtien

claims, first, that Aetna had exclusive control over certain information that Courtien needed to fully perform under the contract, and that Aetna withheld that information in breach of the contract (Lazer Aff. at ¶¶ 8–11); second, that Aetna impermissibly revoked Courtien's authority to obtain information about Aetna billing from AT & T in late March or April 1998, (Id. at ¶ 11, citing Ex. H at 70); and third, that Aetna prevented Courtien from making necessary site visits. Id. at ¶ 18.

In regard to the withheld information, Courtien specifically asserts that Aetna failed to provide "AT & T Billing Edge CD's" during the months that the Agreement was in force and that Courtien could thus not perform the AT & T audit. Id. at ¶¶ 8–11. Vince Cunningham, a non-party employee of AT & T, explained at his deposition that the "Billing Edge CDs" are compact disks that contain Aetna's AT & T invoices, and they are the most efficient and economical method of obtaining the billing information. Lazer Aff., Ex. H at 30–31. Without them, the AT & T audit might involve "tractor-trailer trucks" full of printed invoices. Id. at 30. Cunningham advised Courtien to obtain the CDs directly from Aetna, because AT & T didn't have them. Id. at 31–34 and 64–70. Courtien claims that Aetna never provided the CDs, despite repeated requests. Lazer Aff. at ¶ 10.[2] Aetna does not deny that it never gave the CDs to Courtien. Indeed, in its reply papers, Aetna never specifically mentions the CDs, but argues generally that Courtien's inability to complete the AT & T audit was not the result of any action by Aetna. Def. Reply Mem. at 6–9. Nor does it deny that it effectively revoked its letter of authorization to AT & T.

Courtien argues that "[c]learly, the defendant was contractually obligated to provide the [CDs] to Courtien," (Plaintiff's Mem. in Opp. at 6) but does not point to any express provision of the contract that makes this obligation "clear." Instead, Courtien argues, the obligation arose from the implied duty of good faith and fair dealing read into all contracts under Connecticut law. Id. at 7. Connecticut's highest court has recognized that "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Habetz v. Condon,* 224 Conn. 231, 238, 618 A.2d 501, 505 (1992); *see also Hoskins v. Titan Value Equities Group, Inc.,* 252 Conn. 789, 793, 749 A.2d 1144, 1146 (2000). The covenant " . . . is a rule of construction designed to fulfil the reasonable expectations of the contracting parties as they presumably intended . . . " *Vitarius v. Security Link from Ameritech,* 2000 WL 1268835, at *1 (Conn.Super.Aug.18, 2000) (quoting *Middletown Commercial Assocs. Ltd. Partnership v. Middletown,* 53 Conn.App. 432, 437, 730 A.2d 1201, *app. denied,* 250 Conn. 919, 738 A.2d 657 (1999)). Proof of a breach of the implied covenant requires, inter alia, a showing that the defendant acted in bad faith. *Narumanchi v. Mechanics Sav. Bank,* 2000 WL 1474878, at * 5 (Conn.Super.Sept.20, 2000). "Bad faith in general implies both actual and constructive fraud, or a design to deceive or mislead another, or a neglect or a refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz,* 224 Conn. at 237, 618 A.2d 501.

Courtien argues that the parties reasonably expected that Aetna would provide

---

**2.** Aetna notes that Courtien's claim that "Aetna *never provided* Courtien with the [Billing Edge] CD's (emphasis in original) should have been qualified by an acknowledgment that copies were received during discovery." Tils Reply Aff. at p. 12, n. 8.

necessary information in its exclusive control, and that Aetna's withholding of that information in regard to AT & T, and its revocation of permission to receive information from AT & T, injured Courtien's right to receive the benefits of the agreement. Plaintiff's Mem. at 8. Courtien states that "it was within the contemplation of Aetna when it executed the Agreement that Courtien would obtain information directly from Aetna relating to 'what [Aetna's] tariff was with somebody like AT & T.'" Lazer Aff. at ¶ 9, quoting Mercado Dep., Ex. B at 44. In support of this claim, Courtien offers as evidence deposition testimony by Teodoro Mercado Perez, an employee of defendant Aetna. Lazer Aff., Ex. B. Mr. Mercado testified that he signed authorizations for Courtien to receive information from certain of Aetna's telecommunications vendors, and that Courtien needed some information from "Aetna itself in order to perform the work that was set forth in the agreement." Id. at 44–45. Mr. Mercado also testified about the Billing Edge CDs, acknowledging that they contained information relevant to Courtien's work for Aetna. Id. at 56–57. He further testified that Courtien had tried to get the disks from Aetna, but that he deferred the issue to another Aetna employee, Mary Anne Ghent, who never released the CDs. Id.

In its motion papers, Aetna does not give a definitive reason for its failure to give the CDs to Courtien, but maintains that Aetna's acts constituted a breach of neither the express terms of the agreement nor the covenant of good faith and fair dealing. Def. Reply Mem. at 6–9. "[A]t best," Aetna argues, its acts demonstrated "an internal dispute at Aetna over the scope of the Agreement" that "cannot amount to a breach of the express terms of that Agreement." Id. at 7.

■ Aetna argues that although "Courtien may have raised a triable issue as to whether Aetna impeded Courtien's ability to audit AT & T accounts *at the time Courtien wished to audit them* " (id. at 8, emphasis in original), such issue is immaterial, because "the Agreement does not give Courtien the right to dictate the order in which it was going to audit the seven (7) carriers identified" in the Agreement. Id. Nonsense. The Agreement may not give Courtien the right to dictate the order in which it would audit the identified carriers, but neither does it give Aetna that right[3]. The Agreement did give Courtien the right to audit all seven providers, including AT & T, subject only to the restrictions set forth in the Agreement, and obligated Aetna to provide authorizations to all seven. If Aetna revoked the authorization to AT & T for reasons not addressed in the Agreement, then an issue of fact certainly exists.

Aetna also argues that Courtien's wish to proceed as much as possible with the AT & T account within the thirty days left to it after the agreement was terminated represented a "self-serving priority ... to first go where it believed the most money was." This, Aetna argues, did not accord with Aetna's wish that Courtien ... "start small and go slowly, so that they could work out a mutually satisfactory working relationship before tackling the much larger AT & T accounts...." Def. Reply Mem. at 7. Aetna argues further that if Courtien had been "acting in good faith, it would have been patient while Aetna resolved

---

**3.** Aetna asserts that under the terms of the Agreement, it retained "sole discretion [to] determine whether to implement any or all Recommendations and [to] determine the timing of any implementation." Def. Mem. of Law in Supp. at 8, citing to Agreement, § 3.6. That is the only term regarding timing that Aetna refers to, and it certainly cannot be stretched to suggest that Aetna also had control over the timing of the audits.

any internal issues regarding the AT & T audit and [would have] completed the other six (6) audits first. Had Courtien been more cooperative, it would not have been terminated." Id. at 8. Aetna concludes that its delay of Courtien's audit of AT & T while Aetna's own internal dispute was resolved "cannot be viewed as bad faith." Id. at 9. This argument is both irrelevant and unpersuasive.

First, Courtien has met its burden of producing affirmative facts, based on relevant admissible evidence, that Aetna may have breached its obligation under the contract to authorize the receipt of billing information from AT & T. Although Aetna initially issued that authorization, it does not refute the fact that the authorization was later revoked. Aetna points to no term in the Agreement that would allow such a revocation, and the issue of whether the revocation breached the contract is both material and triable.

Moreover, Courtien has raised a material triable issue as to Aetna's bad faith. One variety of bad faith under the covenant of fair dealing is "a refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested ... motive." *Habetz*, 224 Conn. at 237, 618 A.2d 501. Aetna's "interested motive" can be reasonably inferred from its own acknowledgment that the AT & T account was potentially the most lucrative to Courtien, and from its suggestion that it withheld the billing CDs and revoked the letter of authorization to AT & T because of internal disagreements over the scope of the agreement in regard to AT & T. On a motion for summary judgment, the Court must resolve all ambiguities and inferences to be drawn from the underlying facts in favor of the non-moving party. *See Castle*

*Rock*, 150 F.3d at 137. Applying that standard, the Court finds that Courtien has demonstrated a genuine issue of material fact as to Aetna's alleged breach. Of course, the Court makes no findings as to whether Aetna's acts actually amounted to a breach, only that a material issue exists for trial.

*Issues of Material Fact as to the Proximate Cause of Courtien's Alleged Damages:*

■ Aetna argues that even if the Court finds a triable issue of fact as to Aetna's alleged breach, the motion should be granted as to the breach of contract claim, because Courtien cannot demonstrate a material issue of fact as to its damages. See Def. Mem. in Supp. at 8–9. In a breach of contract action under Connecticut law, the damages award is designed to place the injured party in the same position as he would have been in had the contract been performed. *See Underkofler v. Community Health Care Plan, Inc.*, 1999 WL 464530, *3, 1999 U.S. Dist. LEXIS 10515, at *11 (D. Conn. June 17, 1999) (citing *O'Hara v. Connecticut*, 218 Conn. 628, 642, 590 A.2d 948 (1991)). " 'The function of a court is to award damages which will fulfill the plaintiff's expectations in the bargain and place him in a position which is as good as possible and which approximates the position he would have been in absent a breach.' " *Id.* (quoting *Jolie v. Frito-Lay, Inc.*, No. H–86–1418, slip op. at 7 (D.Conn. Feb. 9, 1988)).

■ The parties present a number of arguments and counter-arguments regarding the issue of damages, hinging on the length of time it might have taken Courtien to complete an audit of the AT & T account[4] and the difficulty Courtien will

---

**4.** The Court notes that nothing in the Agreement required Courtien to *complete* its audits of the seven providers within the one year term of the contract, and fees could be, and apparently were, earned by Courtien on the basis of partial audits.

face in proving an amount of damages with the requisite certainty. It is not the amount of damages that Courtien may be able to prove that is significant on this motion, however, but whether there is an issue of fact as to whether Aetna proximately caused damage to Courtien by breaching the contract. *See Chem–Tek, Inc. v. General Motors Corp.*, 816 F.Supp. 123, 131 (D.Conn.1993) (applying Connecticut law). The Court finds that Courtien has met its burden of setting forth sufficient facts to defeat the motion for summary judgment on this issue.

■ As noted earlier, there is evidence in the record that Aetna revoked its authorization for Courtien to receive necessary information from AT & T as early as late March or early April of 1998, just a few weeks after the contract was signed, thus preventing Courtien from doing an analysis of the AT & T accounts during most of the duration of the contract. Although Courtien itself acknowledges that it may be difficult to prove the precise amount of damages (Mem. in Opp. at 15), the facts in the record now before the Court require an inference that there is an issue of fact as to whether Aetna's breach, if proven, proximately caused some damage to Courtien. Indeed, even if the damages were determined to be nominal only, that does not go to the question of proximate cause. *See Covey v. Willson*, 4 Conn.App. 233, 239, 493 A.2d 290 (1985) (affirming award of nominal damages where trial court found breach of contract but no actual damages were proved); *see also Gianetti v. Norwalk Hosp.*, 1999 WL 732735, *8, 1999 Conn.Super. LEXIS 2455, at *23 (Sept. 9, 1999) (awarding nominal damages

where plaintiff proved breach of contract, but failed to establish economic loss with reasonable certainty).

Aetna also argues that, during discovery, Courtien received all of the information it needed to analyze the AT & T accounts and arrive at a more precise estimate of the fees it could have earned, but did not do the analysis. Aetna has provided no legal basis for any obligation on Courtien's part to make such an analysis based on discovery materials, and the Court declines to find one. Courtien has met its burden to provide more than a mere scintilla of evidence that Aetna proximately caused it damage, and that is all it is required to do in opposition to this motion.

For these reasons, the first prong of Aetna's motion for partial summary judgment, to dismiss the breach of contract claim as it regard AT & T, is denied.

*Plaintiff's Claim of Unjust Enrichment*

■ The second prong of Aetna's motion for partial summary judgment seeks the dismissal of Courtien's second claim, based on unjust enrichment, in its entirety. The ground advanced by Aetna for the dismissal of the claim is that "[w]here there is a valid and enforceable written contract governing a particular subject matter, recovery in quasi contract for events arising out of the same subject matter are [sic] precluded." Def. Mem. in Supp. at 7 (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987))[5]. Because the Complaint alleges the existence of a valid contract covering the same subject matter as the unjust enrichment

---

**5.** The defendant notes that although the breach of contract claim is governed by Connecticut law pursuant to the terms of the Agreement, "an unjust enrichment claim … must arise outside of the scope of a contract," and, in this diversity action, this Court must apply the law of the state in which it sits to the unjust enrichment claim. Def. Mem. in Supp. at 7 n. 2. The plaintiff apparently agrees, and the Court will apply New York law.

claim, Aetna, argues, that claim must be dismissed. *Id.*

Courtien raises several arguments in opposition. First, it argues, the rule set forth in *Clark–Fitzpatrick* is limited to situations where the "suing party has fully performed on a valid written agreement," which is not the case here, and that several exceptions to the general rule exist. *See Clark–Fitzpatrick,* 70 N.Y.2d at 389, 521 N.Y.S.2d 653, 516 N.E.2d 190. The law in New York is that a party "may assert causes of action in both breach of contract and quasi-contract where there is a bona fide dispute concerning existence of a contract or whether the contract covers the dispute in issue ... or where one party wrongfully has prevented the other from performing the contract ..." *Randall v. Guido,* 238 A.D.2d 164, 655 N.Y.S.2d 527 (1st Dep't 1997) (citing *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.,* 187 A.D.2d 225, 594 N.Y.S.2d 144 (1st Dep't 1993); *Carvatt v. Lippner,* 82 A.D.2d 818, 439 N.Y.S.2d 681 (2d Dep't 1981); *Knobel v. Manuche,* 146 A.D.2d 528, 530, 536 N.Y.S.2d 779 (1st Dep't 1989)).

Here, at the very least, there is a dispute about whether Aetna wrongfully prevented Courtien from performing the contract in regard to AT & T, and the Court does not agree with Aetna's attempts to distinguish the applicable cases on their facts. Although the general rule is that " 'where there is an express contract no recovery can be had on a theory of implied contract' (citation omitted) ... [a]n exception lies where the defendant has frustrated the plaintiff's performance of his duties under the contract." *Knobel,* 146 A.D.2d at 529, 536 N.Y.S.2d 779. As discussed in detail supra, a material issue of fact exists as to whether Aetna "frustrated the performance" of Courtien's duties under the contract, and the second prong of Aetna's motion is also denied.

### Aetna's Renegotiation of the VTNS with AT & T

Because both prongs of Aetna's motions could be decided without reference to the renegotiation of the VTNS tariff with AT & T, that issue was not discussed earlier. However, because the issue is significant to both damages and/or the unjust enrichment claim, and because it figured prominently in both parties' papers and will no doubt be a hotly contested issue at trial, the Court takes this opportunity to address it.

Although neither party has defined precisely what is meant by a VTNS agreement, Mr. Mercado explained it as an acronym for "virtual telephone network service." Lazer Aff., Ex. B at 56. He noted further that a VTNS report would contain "inventory of circuits and other accounts" that Aetna had with AT & T. Id. The parties also refer to the VTNS renegotiation as the "Tariff 12 refile." See, e.g., Tils Reply Aff. at ¶ 56. Aetna explains that "refiling" is a "telecommunications term of art for renegotiation." Mr. Mercado, in his deposition, explained that "Aetna's Tariff 12 ... spells out the rates Aetna would pay for certain types of telecommunications services from AT & T." Lazer Aff., Ex. B at 63. The facts in the record before the Court on this motion suggest that, at some point, either at the end of the contract's duration or shortly thereafter, Aetna renegotiated it VTNS agreement with AT & T, thereby realizing significant savings.

Courtien takes the position that Aetna entered into the renegotiation at its suggestion, and that Courtien would have earned significant fees in connection with the renegotiation but for Aetna's breach and bad faith. Plaintiff's Mem. in Opp. at 15 & 18. Courtien also notes that Aetna might take the position that "the huge

signing bonus and discounts which resulted from the renegotiation of the VTNS agreement suggested by Courtien do not constitute 'Savings' and/or 'Refunds' as defined by the Agreement." Id. at 18.

Aetna has not, however, taken that position. Instead, "Aetna does not contend that had Courtien made specific recommendations and/or provided specific information to Aetna that Aetna used in negotiating the Tariff 12 refile ... that it would not have earned fees under the Agreement. Rather, Aetna contends that Courtien cannot identify any evidence that such recommendations or information was provided ..." Thus, Aetna acknowledges that Courtien might have earned fees under the agreement if Courtien had played some role in the renegotiation. It argues that Courtien did not play any role, and has not produced any evidence that it did.

 The record before the Court does, however, contain sufficient evidence to present a material issue of fact regarding Courtien's contribution to the VTNS renegotiation. Hector Trestini, an employee of Aetna, was asked at his deposition whether Chris Lawlor, Courtien's Vice-president, ever "said anything about the Tariff 12 discounts under the VTNS agreement." Trestini responded "Yes," explaining that he believed Lawlor had "mentioned that it was misbilling, VTNS circuit misbilling." Lazer Aff. Ex C at 61–62. This alone is enough to raise a material issue of fact regarding the VTNS renegotiation. Coupled with the evidence that Aetna had a serious internal problem with the scope of the Courtien agreement in regard to AT & T, and the open question of why Courtien was denied access to the AT & T accounts, there is more than enough in the record to present a material issue of fact with regard to the breach of contract claim, and a material issue of fact as to Aetna's frustration of Courtien's performance with regard to the unjust enrichment claim.

For all the reasons set forth herein, the defendant's motion for partial summary judgment is denied.

**SO ORDERED.**